JOHN COX *vs.* NEW ENGLAND TELEPHONE AND
TELEGRAPH COMPANY.

Suffolk. April 6, 1992. - February 24, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR & GREANEY, JJ.

*Anti-Discrimination Law*, Employee, Handicap. *Employment*, Discrimination. *Telephone Company. Handicapped Persons. Words*, "Qualified handicapped person."

Discussion of the meaning of the phrase "qualified handicapped person," as appearing in G. L. c. 151B, § 4 (16), in light of the analogous Federal statute, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), and cases decided thereunder. [381-384]

Discussion of the distinctions in allocation of the burden of proof in employment discrimination cases in which "disparate treatment" is alleged as opposed to those cases involving "disparate impact." [384-36]

In an action involving a claim of employment discrimination on account of handicap under G. L. c. 151B, the judge correctly ruled that the plaintiff did not sustain his burden of proving that a certain task, gaff climbing a telephone pole to a certain height, was not an essential function of the utility splice service technician position the plaintiff sought. [386-388] LIACOS, C.J., with whom ABRAMS, J., joined, dissenting.

In an action involving a claim of employment discrimination on account of handicap under G. L. c. 151B, the judge correctly ruled that the plaintiff did not sustain his burden of proving that he could perform the essential tasks of the job that he sought, thus he did not demonstrate that he was a "qualified handicapped person" entitled to the protection of that statute. [388-390]

Reasonable accommodation by an employer, under the provisions of G. L. c. 151B, § 4 (16), does not require the employer to waive or excuse an employee's inability to perform an essential job function. [390]

In the circumstances of a civil trial, the judge did not abuse his discretion in allowing a defense witness to testify even though the defendant's responses to discovery requests with respect to the witness's testimony had been filed late. [390-391]

CIVIL ACTION commenced in the Superior Court Department on April 11, 1988.

The case was heard by *George C. Keady, Jr.,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Harold L. Lichten* (*Betsy Ehrenberg* with him) for the plaintiff.

*John D. Corrigan, Jr.,* for the defendant.

O'CONNOR, J. This case involves a claim of employment discrimination on account of handicap. In his amended complaint, the plaintiff, John Cox, makes the following allegations. Before 1983, he was employed by the defendant, New England Telephone and Telegraph Company, as a splice service technician (SST). In November of that year, he was seriously injured in a motor vehicle accident that left him with a permanent brain injury affecting his memory, speech, and reading speed. The plaintiff returned to work in a clerical position. In 1986 and 1987, the plaintiff "bid for [an SST] position" and, "[o]n each occasion [he] was awarded the bid, but did not pass the pole climbing course, solely because of his reading and memory difficulties resulting from his handicap. . . . On each occasion, [the] plaintiff consequently was denied the [SST] position." Subsequently, the plaintiff's application to become an SST was denied because he had twice failed the pole-climbing course.

According to the complaint, the "pole climbing test does not adequately test for the duties of [an SST], and has an adverse impact on handicapped persons with reading or memory disabilities." Furthermore, "[w]ith reasonable accommodation, [the] plaintiff would have been able to pass the test" but "[a]t no time did [the defendant] offer or attempt to so accommodate [him]." The plaintiff also asserts that, since June, 1986, he "was fully able to perform the duties of [an SST], and as such was a qualified handicapped person within the meaning of [G. L. c. 151B (1990 ed.)]." The plaintiff claims that as a result of the defendant's failure to award him an SST position, he sustained losses for which, under c. 151B, he is entitled to compensation. The plaintiff

seeks an order awarding him an SST position retroactive to the date of his initial bid, together with money damages.

This case was tried in the Superior Court by a judge without a jury. The judge found that the defendant "is not liable for unlawful discrimination under [G. L.] c. 151B," and he ordered the entry of a judgment for the defendant. The plaintiff appealed, and we then granted his application for direct appellate review. We now affirm the judgment.

We recite the pertinent findings set forth in the judge's memorandum of findings and decision. In 1982 and 1983 the plaintiff worked for the defendant as an SST, a position that required pole climbing. Before becoming an SST, the plaintiff successfully completed the defendant's safe pole-climbing course, including lessons on gaff climbing. "The purpose of the course is to train prospective SSTs to climb telephone poles safely. There are four ways of ascending and descending a pole, to wit: (a) by use of a ladder, (b) by use of steps built into the pole (long spikes protruding from the pole at various heights and on both sides), (c) by use of gaffs (instruments strapped to the legs which have a pointed blade or sticker attached to each so the climber can stick that blade or sticker into the pole), (d) by use of a 'cherry picker' (a basket on the end of an electrically maneuvered crane which can take the occupant up or down).

"The chief disadvantage of the ladder is a question of availability and size or height. The stepped poles are not always present. They are much more likely to be found in congested, urban areas and not likely to be found in rural or suburban areas. The 'cherry picker' is seldom available and cannot be used in close quarters, e.g. rear yards of urban lots."

The judge found that, in November, 1983, the plaintiff sustained multiple serious injuries in a motor vehicle accident, including "a severe closed head injury to the brain stem," as a result of which his physicians restricted him from pole climbing. The plaintiff returned to work in December, 1984, as a clerk. In June, 1986, he was cleared by his physicians and the defendant from the restriction against climbing

poles. Then, in 1986, the plaintiff bid on, and was awarded, a position as an SST, subject to his passing the safe pole-climbing course.

The content of the course given in 1986 was the same as the content of the 1982 course that the plaintiff passed. However, in 1986, unlike 1982, there was a requirement that the course be completed within twenty-six hours. "The course consisted of twelve lessons or parts. After a student completed a part he was tested on that part. If he passed it, it was behind him. If one failed a lesson he could repeat the test and pass it as long as he did not repeat a deviation which he had in the prior test." In a footnote, the judge defined a "deviation" as "a wrong answer if the test only involves questions and answers and a misstep or erroneous movement if the test is physical." The plaintiff failed the 1986 course because he repeated a deviation.

The plaintiff reapplied for an SST position in 1987, and again he was awarded the job subject to his passing the safe pole-climbing course. The plaintiff was to be assigned to the Neponset garage in the Dorchester section of Boston or the garage in the Hyde Park section. The content of the 1982, 1986, and 1987 courses was the same. Also, in 1987, as in 1986, there was a time requirement of twenty-six hours in which to complete the course.

The judge found that the first five lessons in 1987 required only reading, and the plaintiff "kept pace with the other students."[1] The plaintiff successfully completed lessons eleven and twelve, which "consist[ed] of reading plus testing."

"In lesson 6 through 10," the judge found, "physical acts and maneuvers were required. Actually a substantially less amount of reading was required than in 1 through 5. Lesson 6 and 7 required pole climbing. The latter required lateral movement. [The plaintiff] passed lessons 6, 7 and 8. Lessons

---

[1] It is clear from the evidence that the plaintiff completed the first five lessons. However, the evidence does not warrant a finding that the plaintiff "kept pace" with the other students. For reasons to be discussed later in this opinion, it is immaterial that the finding that the plaintiff kept pace with the other students was not warranted.

7, 8 and 9 are identical except for the height at which the maneuvers are performed. They require the use of gaffs. So does Lesson 10.

"[The plaintiff] did have some difficulty with lesson 8 although as stated he passed. When he reached lesson 9 he was required to climb to a level of 18 feet. He stopped at 14 feet. After staying there for an extended period of time, from 5 to 10 minutes, and after one of the instructors attempted to aid him orally by reminding him of the procedures to be followed, [the plaintiff] came down. The plaintiff never completed parts 9 and 10. Thus he did not pass the course. Having failed to pass the course for the second time, according to regulations promulgated by the defendant, well prior to 1986, the plaintiff is now ineligible to take the Safe Pole Climbing Course again. Therefore he is ineligible to become. an SST."

We continue with our recitation of the judge's pertinent findings and discussion: "One of the plaintiff's contentions is that because of where he would be working namely, Dorchester or Hyde Park, he would not have to be proficient in gaff climbing. I find the following facts. Because these areas are urban, a very high percentage of the poles to be climbed would be 'stepped' i.e. with the metal spikes affixed, making gaff climbing unnecessary. 'Cherry pickers' could be used in most instances, but there are few 'cherry pickers' available even in Boston. Ladders are generally not practical because of height. While it happens seldom to SSTs working in Boston, all SSTs employed by the defendant are subject to transfer in case of emergencies, e.g. tornado, hurricane, etc. In case of transfer outside Boston gaff climbing would be a likely need."

The judge also found that, in 1984, the defendant had a study of its safe pole-climbing course made, which resulted in certain changes in the course presentation and in the twenty-six hour completion requirement. He found that "the test taken by the plaintiff is reasonable as to content, method of instruction and the time requirement for completion."

In arriving at his decision in favor of the defendant, the judge reasoned as follows: "To prevail on his claim the plaintiff must show that he is a 'qualified handicapped person.' The statute defines a 'qualified handicapped person' as one who is able to perform the essential functions of the job, or who would be capable if reasonable accommodations were made for his handicap. [G. L.] c. 151B, § 1. The plaintiff contends that he is a 'qualified handicapped person' because he possesses the ability to perform all the essential functions of the job of an SST. According to the plaintiff, climbing poles with gaffs is not an essential function of an SST position. I disagree. Though pole climbing by means of gaffs may rarely occur in the Dedham-Dorchester area, this skill is necessary if an SST employee is to accomplish his job when called to serve rural areas where unstepped poles are common. It is not unforeseeable that this skill would be necessary during an emergency, or even from time to time in Boston and its suburbs. I am further concerned about the plaintiff's safety when climbing a stepped pole."

Having determined that the ability to climb with gaffs is essential to the SST position, the judge then found that the only way for an employer to know whether a job applicant has that ability is to observe him or her climbing with gaffs. The judge concluded that the plaintiff had "failed to demonstrate that he can safely climb poles by means of gaffs," and that the defendant "was not required to eliminate the practicum exam of pole climbing by means of gaffs in order to accommodate the plaintiff." Finally, the judge rejected the plaintiff's contention that the defendant should have granted him additional time to accomplish the pole climbing. He reasoned that "[t]he timed testing was designed to increase safety. Accommodating the plaintiff by allotting him more time to accomplish the test would only endanger his job safety. The defendant is not obliged to dispense with reasonable requirements which ensure safety in the workplace." Satisfied that the plaintiff is not a "qualified handicapped

person" within the protection of G. L. c. 151B, the judge ordered judgment for the defendant.[2]

General Laws c. 151B, § 4 (16), provides in material part that it shall be an unlawful practice "[f]or any employer . . . to . . . refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business. . . . Physical or mental job qualification requirement with respect to hiring, promotion, demotion or dismissal from employment or any other change in employment status or responsibilities shall be functionally related to the specific job or jobs for which the individual is being considered and shall be consistent with the safe and lawful performance of the job."

As used in c. 151B, "[t]he term 'handicap' means (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." G. L. c. 151B, § 1 (17). "The term 'qualified handicapped person' means a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." § 1 (16).

The judge made no finding with respect to whether the plaintiff was a handicapped person during the relevant time period or as to whether the defendant refused to employ the

---

[2]As we discuss below, our resolution of this appeal does not require us to know whether the plaintiff is a handicapped person, a matter not resolved by the findings. Also, in light of our analysis set forth below, we need not resolve questions having to do with whether the judge correctly found that the defendant was not on notice of the plaintiff's handicap. Therefore, in setting forth the judge's pertinent findings, we have omitted reference to findings that relate to the existence or notice of handicap.

plaintiff as an SST "because of his handicap." Instead, the judge focused on whether "the plaintiff . . . show[ed] that he is a 'qualified handicapped person,' " that is, "one who is able to perform the essential functions of the job, or who would be capable if reasonable accommodations were made for his handicap," and he decided that the plaintiff was not such a person. We, too, shall concentrate on the issue of the plaintiff's qualifications to be an SST. Since we decide that the judge did not err in concluding that the plaintiff is not a qualified handicapped person, we need not address the questions of the existence of a handicap or of causation. If he is not qualified for the SST job, as the judge determined, he is not entitled to relief under c. 151B, and the judgment must be affirmed.

This is our first opportunity to construe and apply the Commonwealth's employment discrimination statute, G. L. c. 151B, in a case in which discrimination on account of handicap is alleged. There is, however, considerable case law construing and applying the analogous Federal statute, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), and we may look to those decisions for guidance. See *White v. University of Mass. at Boston*, 410 Mass. 553, 557 (1991) (analysis of a discrimination claim is essentially the same under State and Federal statutes). See generally Note, Employment Discrimination Against the Handicapped: An Analysis of Statutory and Constitutional Protections in Massachusetts, 21 New England L. Rev. 305, 305-332 (1986) (comparing G. L. c. 151B and § 504).

Section 504 of the Rehabilitation Act of 1973 provides in relevant part: "No otherwise qualified individual with handicaps in the United States, as defined in § 706 (8) of this title, shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service . . . ."

For purposes of § 504 of the Rehabilitation Act, "[i]n the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question. 45 C.F.R. § 84.3(k) (1985). When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those functions. *Ibid.* Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, *Southeastern Community College* v. *Davis*, 442 U.S. [397, 412 (1979)], or requires 'a fundamental alteration in the nature of [the] program,' *id.* at 410." *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 287 n.17 (1987). *Doherty* v. *Southern College of Optometry*, 862 F.2d 570 (6th Cir. 1988). Reasonable accommodation does not require an employer to disregard or waive an employee's inability to perform an essential function of the job. *Gilbert* v. *Frank*, 949 F.2d 637, 644 (2d Cir. 1991). *Jasany* v. *United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985).

The term "otherwise qualified individual with handicaps" "refers to a person who is qualified *in spite of* his or her handicap" (emphasis in original). *Doe* v. *New York Univ.*, 666 F.2d 761, 775 (2d Cir. 1981). Only if such a person, despite being handicapped, can perform the essential functions of the job, with or without reasonable accommodation, may he or she be entitled to relief. *School Bd. of Nassau County* v. *Arline*, *supra* at 287-288 n.17. *Gilbert* v. *Frank*, *supra* at 641. *Hall* v. *United States Postal Serv.*, 857 F.2d 1073, 1078-1079 (6th Cir. 1988). *Gardner* v. *Morris*, 752 F.2d 1271, 1279-1280 (8th Cir. 1985). *Prewitt* v. *United States Postal Serv.*, 662 F.2d 292, 305 (5th Cir. 1981).

In most cases involving a claim of discrimination in employment on account of handicap, in order to answer the question whether the plaintiff is otherwise qualified, "the [trial judge] will need to conduct an individualized inquiry and make appropriate findings of fact. Such an inquiry is essential if § 504 is to achieve its goal of protecting handi-

capped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns of [employers] as avoiding exposing others to significant health and safety risks." *School Bd. of Nassau County* v. *Arline, supra* at 287. "Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall* v. *United States Postal Serv., supra* at 1079.

The trial judge's subsidiary findings must stand unless, as a matter of law, they are unwarranted by the evidence, or they are clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). Whether, based on those conclusions, a job function is "essential," *Hall, supra* at 1079, or an accommodation is "reasonable," *Arneson* v. *Heckler*, 879 F.2d 393 (8th Cir. 1989), is a legal conclusion subject to review.

There is no significant distinction between the term "qualified handicapped person," in G. L. c. 151B, and the term "otherwise qualified individual with handicaps," in § 504 of the Rehabilitation Act. Indeed, the Federal regulations interpreting the Rehabilitation Act "generally use the term 'qualified handicapped person,' rather than 'otherwise' qualified handicapped person, on the reasoning that 'the omission of the word "otherwise" is necessary in order to comport with the intent of the statute because, read literally, "otherwise" qualified handicapped persons include persons who are qualified except for their handicap, rather than in spite of their handicap.' 45 C.F.R. Part 84, App. A, at 362 (1990); see also 29 U.S.C. § 1613.702(f)." *Gilbert* v. *Frank, supra* at 641. Because of the similarity between the Federal and State statutes, the Federal cases are most helpful in the resolution of cases involving G. L. c. 151B, which prohibits employment discrimination against qualified handicapped persons.

We have previously recognized a distinction between employment discrimination cases in which "disparate treatment" is alleged, and those involving "disparate impact." *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 227 (1978). In the former, unlike the

latter, proof of the employer's discriminatory motive is critical. See *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 699-700 (1992), and cases cited. Typically, such cases involve alleged intentional discrimination resulting from racial, gender, or other social bias. See *Brunner, supra*; *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432 (1989); *Smith College* v. *Massachusetts Comm'n Against Discrimination, supra*; *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130 (1976). In disparate treatment cases, we have adopted the framework of shifting burdens of persuasion and production of evidence that was articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 135-139.

This is not a disparate *treatment* case. This is a disparate *impact* case, and we agree with the Federal courts which generally hold that the burden-shifting principles enunciated in *McDonnell Douglas Corp.* v. *Green, supra*, are inappropriate in disparate impact cases. See, e.g., *Jasany* v. *United States Postal Serv.*, 755 F.2d 1244, 1249-1250 n.5 (6th Cir. 1985); *Doe* v. *New York Univ., supra* at 776; *Prewitt* v. *United States Postal Serv., supra* at 306-310. This is a disparate impact case because the plaintiff's contention is that, although the defendant's requirement that he complete the safe pole-climbing course in twenty-six hours, including passing gaff-climbing tests, and that he do so in no more than two attempts, is neutral on its face, it has discriminatory impact on him because of his handicap, namely, his cognitive deficiency. The plaintiff's argument is not specifically phrased in terms of "disparate impact" or "surmountable barrier" discrimination, see *Prewitt* v. *United States Postal Serv., supra* at 304-305, 305 n.19, but the thrust of his argument is that he is a victim of disparate impact discrimination because, in spite of his handicap, he can perform the essential functions of an SST, but nevertheless he was rejected because, due to his handicap, he was unable to meet the test requirements. He contends that those requirements were functionally unrelated to the SST job with regard to both

content (gaff climbing) and time for completion. The plaintiff also argues that, even if gaff climbing is an essential function of the SST job, he could have passed the safe pole-climbing course if he were given reasonable accommodation either in the form of more time to pass the test or a third opportunity to take it. He argues, too, that, in any event, he could perform the essential functions of an SST if the defendant would reasonably accommodate him by excusing him from gaff climbing on the job.

The Federal courts are far from unanimous with respect to their allocation of burdens of persuasion and production of evidence in § 504, disparate impact, cases. *Doherty* v. *Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988). To resolve the present case, we need not explore in depth the numerous allocations that are possible, although we do agree with the plaintiff that the framework of burden shifting that we have adopted in disparate treatment cases is inappropriate in a disparate impact case such as this one. With one possible exception, the plaintiff has not taken issue with the judge's ruling that "[t]o prevail on his claim the plaintiff must show that he is a 'qualified handicapped person.' "[3] Therefore, for purposes of this case, the plaintiff had the burden to persuade the judge that he was capable of climbing poles safely, that climbing with gaffs is not an essential duty of an SST, or that, if it is, he can do it.

It is clear that the plaintiff failed to carry his burden of proving that gaff climbing is not an essential function of the job he seeks. The judge found the opposite. He found, "Though pole climbing by means of gaffs may rarely occur in the Dedham-Dorchester area, this skill is necessary if an

---

[3]The plaintiff states that, under G. L. c. 151B, § 4 (16), "the burden of proving an inability to accommodate always rests with the employer." We agree, but that burden is only triggered "[a]fter a plaintiff produces sufficient evidence to make at least a facial showing that reasonable accommodation is possible." *Gardner* v. *Morris*, 752 F.2d 1271, 1280 (8th Cir. 1985). *Arneson* v. *Heckler*, 879 F.2d 393, 396 (8th Cir. 1989). *Treadwell* v. *Alexander*, 707 F.2d 473, 478 (11th Cir. 1983). As we shall discuss, no such facial showing was made in this case.

SST employee is to accomplish his job when called to serve rural areas where unstepped poles are common. It is not unforeseeable that this skill would be necessary during an emergency, or even from time to time in Boston and its suburbs." The plaintiff challenges the judge's conclusion as based on clearly erroneous findings and misapplication of the legal "essential function" standard. There was no error. The plaintiff relies on the testimony of three of the defendant's SSTs who testified that through their work for many years in the Dorchester district, as well as in other districts, and as a result of their activities as union officials, they were familiar with the job requirements of an SST assigned to Dorchester. They were virtually unanimous in their testimony that they had never used or been issued gaffs, and that they did not know anyone who used them.

It is unlikely that the judge would have reached the conclusion he did if he had believed the plaintiff's witnesses. However, there was other evidence, presented by defense witnesses, and the judge appeared to give more credit to that evidence than to the plaintiff's. We summarize the defendant's evidence briefly. Stephen Myers testified that he had retired from the defendant's employ approximately two months before the trial. During his career he had climbed telephone poles extensively. During the more recent years, Myers was in charge of a staff that developed and evaluated the defendant's training courses, including the safe pole-climbing course. He was responsible for adding a time limit to the completion of that course in 1986. Myers climbed poles for the defendant during labor strikes. He almost always used gaffs when he climbed because it was the safest way to climb, it gave the greatest degree of maneuverability, and sometimes it was the only way in which work could be done. Myers testified that in rural areas, only poles in high traffic areas are stepped and gaffs must be used where poles are unstepped and a bucket truck or ladder cannot be used. Myers stated that, as the manager of the pole-climbing school, he had observed SSTs in the field throughout New England using gaffs. He said that he, with others, had insti-

tuted a policy of providing gaffs to SSTs in training "rather than allowing the individual supervisors . . . to issue the equipment that was needed."

Robert Courtney Jones testified that he had been employed by the defendant for twenty-one years; that his work from 1970 to 1978 required him to climb telephone poles, and that for many years he had been an instructor in safe pole climbing. According to him, bucket trucks and ladders have limited utility and frequently gaffs are required. He also testified that in emergency situations such as tornadoes and hurricanes, as well as on other occasions, SSTs assigned to urban areas are moved to rural places where gaffs are needed. We are satisfied that the judge's findings with respect to the essential functions of the SST position were not clearly erroneous, and that he applied the correct legal standard.[4]

Not only did the plaintiff fail to persuade the judge that gaff climbing is a nonessential function of the SST position, but also, according to the judge's memorandum of findings and decision, the "plaintiff failed to demonstrate that he can safely climb poles by means of gaffs." Indeed, the judge stated, "I am further concerned about the plaintiff's safety when climbing a stepped pole." We are not persuaded that the judge's findings in this regard were clearly erroneous. The evidence presented by the defendant showed, as the judge found, that lessons seven, eight, and nine in the 1987 course, all of which required the candidate to climb unstepped poles with gaffs, were identical except that the height of the climb increased with each succeeding lesson. Lesson seven involved a six-foot pole; lesson eight involved a twelve-

---

[4]The Chief Justice in his dissent seems to suggest that gaff climbing cannot be an essential function of an SST's job because, although it is foreseeable that such a skill would be required in the event of an emergency, the emergency might seldom or never arise. That is like saying that the shooting of a gun is not an essential function of a police officer's work because, as to a particular officer, the necessity to shoot may never arise. We have no doubt, however, that the ability to shoot a gun is essential to employment as a police officer.

foot pole; and lesson nine involved an eighteen-foot pole. The plaintiff passed lessons seven and eight. According to the testimony of defense witnesses concerning the plaintiff's attempt to pass lesson nine, he stopped at a height of sixteen feet or so, and froze there for five to ten minutes. The instructors had to talk the plaintiff "into the maneuvers, the things, the exact same things he did at lesson number eight and lesson number seven, to move his feet with the proper sequence. And at some point, he did not do anything, safetied off and came down." Witness Jones testified that, "being a pole climbing instructor, we get people who have passed the course and then have quit the company from fear of going to work outside and also have quit at higher levels. We kind of sensed that from [the plaintiff] when he stopped after he had completed all the lessons he needed to learn, only thing was different was height. He had stopped trying at about 11:10 or 11:05, did not continue to try any more or did not continue to maneuver in the proper positions, that he had quit." Jones testified that that was not an unusual occurrence.

We cannot say that the judge's determination that the plaintiff was not a *qualified* handicapped person was wrong. The plaintiff contends that the defendant could have reasonably accommodated the plaintiff by allowing him more time than twenty-six hours to pass the safe pole-climbing course, or by allowing him to take the course a third time. The plaintiff asserts that the judge failed adequately to address these issues. We do not reach them because, even if the defendant should have allowed the plaintiff extra time or a third attempt to establish that he is capable of climbing safely with and without gaffs, the plaintiff's case must fail. The case must fail because the plaintiff did not prove to the judge's satisfaction that with more time or another chance the plaintiff would have been able to pass the test. The plaintiff has not proved that he can climb poles safely with and without gaffs and, therefore, he has not shown that he is a qualified handicapped person entitled to the protection of G. L. c. 151B. The point is made by the plaintiff's cross-examination of defense witness Myers: PLAINTIFF'S COUNSEL:

"[I]f given a couple more hours, it's *possible*, is it not, that he could have completed by the end of Friday both Lessons [nine] and [ten], is that correct?" THE WITNESS: "I can't answer that because he never — we don't know at this point if he would have been successful at the [eighteen-] foot level." PLAINTIFF'S COUNSEL: "Okay." THE WITNESS: "He never climbed that high." PLAINTIFF'S COUNSEL: "So would it be a fair statement that as we all sit here today we simply don't know whether [the plaintiff] would have successfully passed Lesson [nine]." THE WITNESS: "That's a fair statement."

The plaintiff presents two other arguments. One is that, if gaff climbing is an essential function of an SST assigned to the Dorchester area, and if the plaintiff is unable to gaff climb, he nevertheless is a qualified handicapped person because the defendant could and should reasonably accommodate him by excusing him from gaff climbing on those few occasions when the need to do so might arise. We disagree. As we have said earlier in this opinion, the Federal law is clear, and there is no reason to construe the Commonwealth's law differently, that reasonable accommodation does not include waiving or excusing an inability to perform an essential job function.

The plaintiff's other argument is that the judge abused his discretion by allowing Dr. Richard R. Reilly, a defense witness, to testify concerning studies relative to the relevancy of time limitations as applied to the defendant's safe pole-climbing course. The plaintiff claims that the defendant's failure to make a timely response to discovery requests required the exclusion of the testimony. In light of our conclusion that the plaintiff is not entitled to relief even if the defendant failed reasonably to accommodate him by giving him extra time to complete the safe pole-climbing course, the evidentiary question is unimportant. In any event, the plaintiff could have asked but did not ask the judge for time, if he needed it, to prepare his cross-examination or take other steps following late receipt of the discovery materials. The

judge's allowance of Dr. Reilly's testimony was not an abuse of discretion.

*Judgment affirmed.*


LIACOS, C.J. (dissenting, with whom Abrams, J., joins). As the court notes, *ante* at 382-384, both for purposes of G. L. c. 151B and § 504 of the Federal Rehabilitation Act, a qualified handicapped person is one who can perform the essential functions of the job in question, with or without reasonable accommodation. The court, however, never defines what constitutes an essential function, and does little more in reviewing the trial judge's determination that gaff climbing is an essential function of an SST position than announce its agreement with the trial judge. The judge held that gaff climbing is an essential function of the SST job because "[i]t is not unforeseeable that this skill would be necessary during an emergency, or even from time to time in Boston and its suburbs." *Ante* at 387. The court takes a view today of G. L. c. 151B that is, in my opinion, overly restrictive and out of line with the intent of both c. 151B and § 504. Because I believe that the judge committed clear error in his determination that gaff climbing is an essential function of an SST position, I dissent.

While the court acknowledges that the "plaintiff challenges the judge's conclusion [that gaff climbing is an essential function of an SST position] as based on clearly erroneous findings and misapplication of the legal 'essential function' standard," *ante* at 387, its review focuses only on the plaintiff's challenge to factual questions, and concludes that the judge obviously credited the defense witnesses' testimony more than the testimony of the plaintiff's witnesses. Even if one accepts the judge's factual findings regarding the frequency and importance of gaff climbing, which, for the sake of argument, I do, the legal conclusion that gaff climbing constitutes an essential function of an SST position is in error.

The court offers no standard for evaluating a function to determine whether it is essential. The judge appears to have applied a standard that, although not stated, would sound something like this: If a function that is not regularly a part of the job in question foreseeably might be required in an emergency or is presently required in areas of New England where the plaintiff, absent an emergency, would never be called upon to work, then that function is essential. I cannot accept such a strained interpretation of the word "essential."

By defining a qualified handicapped person as one who can perform the essential functions of a job with or without reasonable accommodation, G. L. c. 151B (and § 504) necessarily contemplates that some job functions are not essential. See *Hall* v. *United States Postal Serv.*, 857 F.2d 1073, 1079-1080 (6th Cir. 1988). Although I believe that common sense tells us what "essential" means, I note that the guidelines furnished by the Massachusetts Commission Against Discrimination on c. 151B state that " 'essential functions' of a job are those activities which must necessarily be performed by an employee to accomplish the principal object(s) of the job." Guidelines: Employment Discrimination on the Basis of Handicap — Chapter 151B, 8 Mass. Discrimination L. Rep. 2004, 2008 (1986). Therefore, the question becomes, did the judge, in making his "individualized inquiry," see *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 287 (1987), properly conclude that gaff climbing necessarily must be performed to accomplish the principal objects of an SST position? The judge's own factual findings, accepted verbatim by this court, answer this question in the negative: "Though pole climbing by means of gaffs may rarely occur in the Dedham-Dorchester area [where the plaintiff would work], this skill is necessary if an SST employee is to accomplish his job when called to serve rural areas where the unstepped poles are common. It is not unforeseeable that this skill would be necessary during an emergency, or even from time to time in Boston and its suburbs." *Ante* at 386-387. I agree with the plaintiff that such speculation about a hypothetical need for gaff climbing cannot support a holding that this activity is

"essential." An employer may not make a function essential merely by claiming that it is. See *Pandazides* v. *Virginia Bd. of Educ.*, 946 F.2d 345, 349 (4th Cir. 1991).

The court notes today that this case presents us with our first opportunity to construe and apply the Commonwealth's employment discrimination statute in a case involving discrimination on account of handicap. *Ante* at 382. I deeply regret that the court has treated this as an opportunity to constrict the protections that the statute provides by accepting such a narrow definition of "essential function." The position the court takes today undercuts severely the clearly expressed intent of the Legislature to give protection to the qualified handicapped person "from deprivations based on prejudice, stereotypes, or unfounded fear," *School Bd. of Nassau County* v. *Arline, supra* at 287. I dissent.