Gants, J.
The plaintiff, the City of Cambridge (the “City”), brought this action under G.L.c. 31, §44 to appeal the Civil Service Commission’s (the “Commission”) decision to overturn the City’s four-day suspension of defendant David Diamond (“Diamond”). The City now moves for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c).
BACKGROUND
Diamond has been a Cambridge Police Officer since 1993. After Diamond and his wife divorced, they had *23 a disagreement which resulted in both parties seeking and obtaining Abuse Prevention Orders under G.L.c. 209A on October 17, 1997. The Cambridge District Court’s 209A Order against Diamond ordered him to surrender all guns, ammunition, gun licenses, and Firearms Identification (“FID”) cards. The Order was for a two-week period pending a further hearing on October 31, 1997. Upon learning of the Order prohibiting Officer Diamond from carrying weapons for up to two weeks, the Cambridge Police Department continued to pay him but placed him on administrative duty.
Officer Diamond filed a motion to modify the Order to permit him to carry his police weapon while on duty. The motion was denied. On October 31, 1997, after a hearing, the District Court extended the 209A Order, without modification, for three more months, until January 30, 1998, on which date a new hearing was scheduled. On November 4, 1997, City Manager Robert W. Heafy (“Heafy”) suspended Diamond without pay for five days and issued a notice of contemplated discipline for a suspension up to January 30, 1998. The basis for the suspension (and the subject of the disciplinary hearing that was scheduled for November 10, 1997), as described by Heafy in his letter to Diamond, was that “a Cambridge District Court Judge has ordered that you not carry or be in possession of a firearm, including a police service revolver, pending a hearing on January 30, 1998, thereby preventing you from performing your regular duties as a police officer.”
On November 7, 1997, the District Court modified the c. 209A order against Diamond, removing the prohibition against carrying a weapon. The City held a disciplinary hearing, as scheduled, on November 10, 1997, the fifth day of the five-day suspension. On November 14, 1997, Heafy, who presided over the hearing, issued a decision that upheld four days of the suspension, through the shift on November 7 when Diamond could not carry a firearm, but found that no just cause existed for the fifth day of the suspension— November 10 — or for any further suspension.
Diamond then appealed the four-day suspension to the Civil Service Commission. A full hearing was held on May 11, 1998, presided over by Hearing Officer John Tobin. On July 13, 1998, the Commission found that the City had “not shown by a preponderance of the evidence that there was a reasonable justification for its action in disciplining” Officer Diamond, and overturned the four-day suspension imposed by the City. The City moved for reconsideration, which was denied after hearing.
DISCUSSION
As the Commission itself recognized, “the question before the commission was not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision.” Watertown v. Arria, 16 Mass.App.Ct. 331, 334 (1983), quoted in Civil Service Commission Decision, Case No. D-5947 at 3 (“the Decision”). In the context of the instant case, the question before the Commission was whether the City had reasonable justification to suspend a police officer without pay after determining that the police officer, as a result of a final 209A Order issued after hearing, was prohibited from possessing a firearm for at least three months.
The Commission found that the City had failed to show that Diamond “was unable to perform his duties as a police officer as a result of a court order” and, therefore, had failed to meet its burden of establishing by a preponderance of the evidence that there was a reasonable justification for the suspension. Decision at 4-5. It declared, “There is not a scintilla of evidence that carrying a gun is necessary to perform the duties of a police officer in the City of Cambridge.” Id. at 4. The essence of the Commission’s decision is that every police officer in the City was not required to possess a firearm; the City had permitted Diamond to remain on administrative duty pending his hearing in District Court even though he was unable to possess a firearm and had permitted other officers to do so in some circumstances. Since the City’s sole basis for the suspension was Diamond’s inability to possess a firearm, it could not demonstrate that the ability to possess a firearm was among his essential duties. Indeed, the Commission found that, in view of these exceptions, the City “has waived any obj ection it might have had to [Diamond’s] inability to carry out his duties if in fact he was so unable.” Id.
In reviewing a decision of the Civil Service Commission, “the court may set aside and reverse the decision ... if it finds that such decision . . . (c) is based upon an error of law; or... (e) is unsupported by substantial evidence; or (f) is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law . . .” G.L.c. 31, §44. This Court finds that the Commission’s decision is unsupported by substantial evidence and based upon errors of law.
It simply is not true from the administrative record that “]t]here is not a scintilla of evidence that carrying a gun is necessary to perform the duties of a police officer in the City of Cambridge.” At the hearing, Police Superintendent Harold Murphy testified that the three month 209A Order meant that Diamond would be unable to perform his regular duty as a police officer. Michael Gardner, the City’s Personnel Director, testified that, if unable to cany a weapon, Diamond would not be able to perform the essential functions of his job as a police officer. Officer Diamond himself admitted in his testimony that the 209A Order would prevent him from performing his assigned street patrol duties.
The Commission appears to have reached this conclusion based on an error of law and a factual conclu *24 sion unsupported by substantial evidence. First, based on what Hearing Officer Tobin declared in the hearing on the motion for reconsideration, the Commission appears to have believed that, to prove that carrying a firearm is an essential function of the job of a police officer, the City must offer evidence of a written rule or job description that specifically declared that every police officer must be capable of possessing a firearm. A job requirement, however, need not be in writing to exist. See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 823; Cox v. New England Tel. & Tel. Co., 414 Mass. 375 (1975). The testimony of the City’s Police Superintendent and its Personnel Director, evidencing the employer’s judgment as to which functions are essential for a police officer, may be considered in determining whether the ability to possess a firearm is an essential requirement for a Cambridge police officer. Labonte, 424 Mass. at 823 and n.13.
Second, the Commission appears to have concluded that, since police officers who cannot possess a firearm may perform administrative duties, the possession of a firearm is not essential to the job. However, the mere fact that a police officer may perform some duties without a firearm does not mean that the possession of a firearm is not essential. Among the statutory obligations of police officers is that they “shall suppress and prevent all disturbances and disorder.” G.L.c. 41, §98. It is not a coincidence that the next sentence of that statute permits police officers to carry such weapons as the Chief of Police determines to be appropriate. G.L.c. 41, §98. It may be possible to suppress and prevent some disturbances and disorder without carrying a firearm, but it is unlikely that a police officer can suppress and prevent all without being armed. In addition, the City’s Police Rules and Regulations require a police officer to “(a)ssist and protect, and come to the aid of, other members of the Department who in the exercise of their duties are in need of aid and assistance.” While a police officer limited to administrative duly because he cannot possess a firearm may be of some use to the Cily, he cannot be counted on to suppress and prevent disorder or to aid another police officer in distress. The City of Cambridge is permitted to require that a police officer be available to assist in an emergency; officers who cannot cany a firearm cannot provide such assistance. See Cox, 414 Mass. at 388 n. 4 (skill necessary in emergency may be essential function ofjob). As the Supreme Judicial Court declared in another context, “We have no doubt... that the ability to shoot a gun is essential to employment as a police officer.” Id.
It was also an error of law for the Commission to find that the City “waived” any objection it may have had to Officer Diamond remaining on duty because it permitted him to remain on duty while he challenged the temporary 209A order. A City does not waive its right to act by exercising its discretion to postpone such action, especially when, as here, it postponed acting on a temporary 209A Order until it became a final Order. See generally LaBarge v. Chief Administrative Justice of Trial Court, 402 Mass. 462, 468 (1988); DeGloria v. Chief of Police of Metheun, 8 Mass.App.Ct. 356, 360-61 (1985). Indeed, if the lawwere otherwise, then any act of mercy towards an employee by a public employer would invite a claim that, by granting such mercy, the public employer had waived its right to act with greater severity. Such a rule of law would yield two results, neither salutary: it would discourage employers from being merciful and, when they acted so, prevent them from taking stiffer personnel action even when justified by the circumstances.
Nor did the City waive its right to declare the ability to possess a firearm an essential function of a police officer because, under its collective bargaining agreement with the Police Officers Association, it permitted officers who were medically incapacitated from on-the-job injuries to remain on duty. The fact that the City was bound by a collective bargaining agreement to act in a certain way does not oblige it to act that way in the absence of any such agreement. Indeed, here, the Commission found that the Police Officers Association had never even proposed a policy that would require the City to assign officers in Diamond’s situation to administrative duty. Moreover, even in the absence of a collective bargaining agreement, it is perfectly sound employment policy for the City to bend more for an officer who cannot cany a firearm because he was injured in the line of duty than for an officer who cannot cany a firearm because, as here, a Court found that he posed a substantial likelihood of immediate danger of abuse.
In conclusion, the Commission’s finding that the City had failed to prove reasonable justification for suspending Officer Diamond is not supported by substantial evidence. At the time of the suspension, Officer Diamond, formerly a patrol officer, could not perform his regular duties on the street for at least three months because the District Court, after finding that he posed a substantial likelihood of immediate danger of abuse to his ex-wife, had barred him from possessing any firearm. The City was entirely justified in determining that it did not want to pay him to be a police officer when, for at least three months and perhaps more if the Order were renewed, he could not have a firearm in his actual or constructive possession and therefore could not perform the essential duties of a police officer. Simply because the City, under some circumstances, is prepared to carry a police officer on administrative duty does not mean that it must cany all its officers on administrative duty whenever they are barred from possessing a firearm. The City was not mandated to suspend Officer Diamond but it was plainly reasonably justified in doing so.
ORDER
For the reasons stated above, plaintiff City’s motion for iudgment on the pleadings in favor of the plaintiff is ALLOWED.