Gants, J.
The plaintiff, John Hayward (“Hayward”), has filed this action alleging that his employer, the Massachusetts Water Resources Authority (“MWRA"), has discriminated against him because of his handicap, in violation of G.L.c. 15IB. Both the MWRA and Hayward have moved for summary judgment. After hearing and for the reasons stated below, the MWRA’s motion for summary judgment is ALLOWED and Hayward’s motion for summary judgment is DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Here, although each party is moving, the Court shall present the facts in the light most favorable to Hayward. Therefore, the recitation of the facts below should not be misunderstood as findings of the Court.
Hayward was hired by the MWRA in February 1992 and, in April 1992, assigned to a permanent laborer position in the Sewerage Division at the Ward Street Headworks in the South End of Boston. In this job, Hayward was required to perform a number of duties that necessitated his being on his feet more than half of his working hours and performing physical tasks such as cleaning and maintenance, shoveling snow, mowing lawns, operating screening equipment, and loading and unloading trash and stock. In the fall of 1994, the MWRA reorganized the Sewerage Division and eliminated the skilled laborer position to which Hayward had been assigned. On November 22, 1994, before Hayward had been reassigned, his physician, Dr. Richard Cohen, wrote the MWRA and informed it that he had been treating Hayward over the past six months for peripheral vascular disease, hyperlipidemia, hypertension, and diabetes. Dr. Cohen reported that Hayward’s “progress has been excellent and his health has improved greatly on the current treatment plan.” Dr. Cohen wrote that Hayward’s treatment required him to make weekly visits to Dr. Cohen’s office for four hours during the daytime, and expressed concern that a change in his work schedule would make it impossible for Hayward to continue with these weekly visits. Dr. Cohen declared that an interruption in treatment would place Hayward medically at risk.
Hayward was transferred on December 5, 1994 to a position as a Building and Grounds worker at the Deer Island Treatment Plant. This new assignment, like his previous one, required Hayward to be on his feet much of his working day, performing such tasks as cleaning and maintenance, shoveling snow, mowing the lawn, and loading and unloading stock. The MWRA accommodated Hayward’s need for time off to continue his weekly visits for treatment with Dr. Cohen.
On February 21, 1995, Hayward wrote the MWRA that it was impossible for him to fulfill the job requirements in his new position because of his peripheral vascular disease, diabetes, and hypertension. Two days later, Dr. Cohen wrote a letter to the MWRA in support of Hayward’s contention, declaring that the change in job duties has “overly burdened his functional capabilities," caused his medical condition to worsen significantly, and rendered him unable to meet his job demands. Dr. Cohen wrote that it was medically necessary for Hayward’s job duties to be reduced to a less physically demanding position. On or about Februaiy 27, 1995, the MWRA placed Hayward on administrative leave without pay (but with medical benefits) pending an evaluation of his request for a reasonable job accommodation. He has remained on administrative leave since that time.
Early in March 1995, the MWRA sent Hayward to be examined by Dr. Brian Morris, who essentially *240 confirmed Dr. Cohen’s opinion. Dr. Morris declared that Hayward should not stand or walk for longer than five minutes per hour, should not walk further than 20 yards at a time, and should not lift over 30 pounds. After reviewing the essential functions of Hayward’s position as a Building and Grounds worker, he concluded that, with these restrictions, Hayward will not be able to perform these duties. Dr. Morris, however, did conclude that Hayward could return to work in another position with these restrictions.
Hayward, prior to his administrative leave, was performing his job as a Buildings and Grounds worker more than adequately. His performance appraisal, dated March 8, 1995, declared that he met expectations, “works well with little supervision,” and “does a thorough job.”
On August 25, 1995, the MWRA informed Hayward in writing that it had determined “that your medical disability prevents you from performing the essential functions of your position with or without a reasonable accommodation. In other words, there is no accommodation that the MWRA can make that would enable you to perform the duties of a Building & Grounds Worker.”
Hayward’s medical condition has remained essentially unchanged since he was placed on unpaid administrative leave. He concedes that he cannot perform the duties, as described in the MWRA’s position description, of either a Building and Grounds worker or a skilled laborer.
The MWRA has invited Hayward to consider two open positions at the MWRA whose position requirements comport with Hayward’s medical restrictions. In April 1995, the MWRA discussed with Hayward the possibility of his becoming an information aide, essentially a receptionist, where he would greet visitors upon their arrival, confirm appointments, monitor sign-in procedures, and direct visitors to where they needed to go. Hayward said that he could not consider this position because of his frequent need to urinate. In January 1999, the MWRA offered him a temporary 18-month assignment as a van driver, but Hayward rejected this position because it was only temporary.
Hayward has applied for other positions with the MWRA, mostly as a skilled laborer, even though he acknowledges that he cannot perform all of the required duties of these positions set forth in their job descriptions. Essentially, Hayward wants the MWRA to carve out a new skilled laborer position for him in which his only job requirement is to drive a truck or van. No such position presently exists at the MWRA.
DISCUSSION
The MWRA contends that it is entitled to summary judgment because there is no dispute that Hayward cannot perform the essential functions of his previous job as a Building and Grounds worker even with reasonable accommodation. Under G.L.c. 15IB, §4(16), it is unlawful:
For any employer . . . to . . . discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.
G.L.c. 151B, §4(16) (emphasis added). A “qualified handicapped person” is:
a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.
G.L.c. 151B, §1 (16) (emphasis added). In a case alleging unlawful discrimination on the basis of handicap, the burden rests with the plaintiff to establish as part of his prima facie case that he is a “qualified handicapped person.” See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997); Beal, 419 Mass. at 541. One cannot determine whether a person is a “qualified handicapped person” except in the context of a particular job. For instance, Itzhak Perlman is certainly a “qualified handicapped person" as a violinist, but not as a shortstop. There is indeed no dispute that the plaintiff, even with reasonable accommodation, cannot perform the essential functions of the job he previously held as a Building and Grounds worker. In his letter to the MWRA dated February 21, 1995, he listed the job duties of aBuilding and Grounds worker, and specified with respect to each of these duties why he physically cannot perform them, mostly because they require prolonged standing and constant walking. He concluded, “Based on requirements of the job, I do not foresee that any accommodations are possible due to the nature of the responsibilities.” Therefore, with respect to that particular job, he is not a “qualified handicapped person” and, as a result, the plaintiff cannot make out a prima facie case of handicap discrimination based on his removal from that particular job.
The plaintiff argues, however, that the MWRA has a legal duty of reasonable accommodation under G.L.c. 15 IB and has failed to fulfil that duty. He contends that the MWRA’s duty of reasonable accommodation required it to take one of two alternative steps:
1. Carve out a new job title from his previous job title, specifically truck or van driver, that Hayward can perform with reasonable accommodation. Hayward observes that skilled laborers and Building and Grounds workers sometimes are assigned the task of driving a truck or van for an entire day, and he wants the MWRA to take this subset of the job *241 duties of those positions, and create a new position in which the only duties are this subset of duties.
2. Make reasonable efforts to place Hayward in a permanent MWRA position that requires only sedentary work, providing him, if needed, with additional training to perform this sedentary work.
With respect to the first alternative, this Court holds that an employer’s duiy of reasonable accommodation does not require the employer to create a new position with only a subset of the essential duties of the previous position. “Reasonable accommodation does not require an employer to disregard or waive an employee’s inability to perform an essential function of the job.” Cox v. New England Telephone & Telegraph Co., 414 Mass. 375, 383 (1993). See also Beal, 419 Mass. at 542 (employer may refuse to accommodate any handicap “that necessitates the substantial modification of employment standards”). In Cox, the plaintiff was a splice service technician for the telephone company who, as a result of a permanent brain injury, could no longer reliably climb telephone poles. 414 Mass, at 376-79. The Court recognized that pole climbing was rarely needed in the Dedham-Dor Chester area, where the plaintiff would be working, but also recognized that climbing poles may become necessary in an emergency and in some suburban and rural areas. Id. at 379-80. The Court did not require the employer to carve out a new position of urban, non-emergency splice service technician which would have excluded pole climbing as an essential duty. Id at 390. Having found that pole climbing was sometimes essential to the job of a splice service technician, and that no reasonable accommodation would permit the plaintiff reliably and safely to-climb a pole, it upheld the finding of no handicap discrimination. Id at 390.
This is not a case where the plaintiff contends that he can functionally perform the assigned job tasks without performing more physically demanding tasks that the employer spuriously characterizes as essential functions. Compare with id. at 386. Nor is this a case where there is a dispute of fact as to what constitutes the essential functions of the plaintiffs job. Compare with Labonte, 424 Mass. at 822-23. Here, the plaintiff himself listed the job duties in his February 21, 1995 letter to the MWRA, and specified why he physically can no longer perform those duties. Rather, this is a case in which the plaintiff has identified one job duty among many which he can physically perform and wants the MWRA to create a new position in which the only essential function is this duty. Even if this job duty existed and could theoretically constitute a full-time position, it is not reasonable to require an employer, as an accommodation to a handicapped employee, to narrow its flexibility in the tasks it assigns to employees by creating a job description with a single duty. The employer could certainly do this if it wanted, but the law does not mandate it. By analogy, if a baseball team’s left fielder injures his arm, the manager may leave him on the team and make him a designated hitter, but G.L.c. 15IB does not mandate that he be assigned that role as a reasonable accommodation to the left fielder’s handicap.
With respect to the second alternative, the plaintiff attempts to equate the employer’s duty not to discriminate on the basis of handicap with an employer’s duty to provide reasonable accommodation. The employer’s duty of reasonable accommodation exists only with respect to a particular job — this duty obligates the employer to make reasonable adjustments or adaptations to permit a handicapped person to perform the essential functions of a particular job. See G.L.c. 151B, §4(16); Cox, 414 Mass. at 383. With respect to a particular job, an employer’s duty not to discriminate on the basis of handicap may indeed be identical to its duty to make reasonable accommodation for that handicap. However, when, as here, an employee, because of a handicap, is no longer able, even with reasonable accommodation, to perform the essential duties of his particular job, the employer’s duty of reasonable accommodation no longer applies and the only applicable duty to that employee is the duty not to discriminate on the basis of handicap.
What is the scope of an employer’s duty not to discriminate on the basis of handicap in the context of an employee who, even with reasonable accommodation, can no longer perform his job because of his handicap? The employer’s duty in this context is to treat a handicapped employee in the same fashion as it treats a non-handicapped employee who, through no fault of his own, no longer can continue in his previous job, either because the job has been eliminated or has been upgraded beyond the qualifications of the employee. For instance:
If an employer’s policy or practice in such circumstances is to dismiss the non-handicapped employee and simply permit the employee to apply for any vacant position like anyone else, without giving him any preference over any other applicant, then the employer may dismiss the handicapped employee and treat him the same. If the handicapped employee were to apply for other positions within the company, then the employer would simply have a duty not to discriminate against the handicapped person in his application for employment. As part of that duty not to discriminate, the employer could not reject the handicapped employee for a position because it would need to make reasonable accommodation to permit the handicapped employee to perform that position. See generally 42 U.S.C. §12112(b)(5)(B) (unlawful to deny employment opportunity to an otherwise qualified job applicant with a handicap “based on the need of [the employer] to make reasonable accommodation to such individual’s physical or mental impairments”).
If an employer’s policy or practice in such circumstances is to place the non-handicapped employee *242 in the first vacant position that comes open for which that employee is qualified, and give that employee absolute preference over all other applicants for that position, then the employer must do the same with the handicapped employee.
If an employer’s policy or practice in such circumstances is to permit the non-handicapped employee to apply for any vacant position and give him preference over any non-employee for that position (so that, if his qualifications and abilities were seen as identical to a non-employee, he would be given the job), then the employer must do the same with the handicapped employee.
It should be noted that this analysis is different under Massachusetts law than under the federal Americans with Disabilities Act (“ADA”). The ADA defines a “qualified individual with a disability” as “an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.” 42 U.S.C. §12111(8). This is essentially the same definition as a “qualified handicapped person” under G.L.c. 151B, §1 (16), except that the ADA definition makes it clearer that the job involved is either the job the handicapped person holds or the job he is applying to hold. Despite this definition, though, the ADA specifically declares that “reasonable accommodation” “may include . . . reassignment to a vacant position.” 42 U.S.C. §12111(9)(B). G.L.c. 151B, in contrast, provides no definition of “reasonable accommodation.” Under the ADA, as under G.L.c. 15 IB, it is unlawful to discriminate on the basis of handicap, and discrimination includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such . . . entity." 42 U.S.C. §12112(b)(5)(A). Therefore, an employer maybe found under the ADA to be unlawfully discriminating on the basis of handicap if it fails as a reasonable accommodation to reassign a handicapped person to a vacant position. See generally Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999).
The Federal Circuits are split over what this aspect of the statutory definition of “reasonable accommodation” means in practice. The '10th Circuit and the United States Equal Employment Opportunity Commission interpret the ADA language that “reasonable accommodation” “may include . . . reassignment to a vacant position” to require that the handicapped person be given a vacant position as long as the handicapped person is minimally qualified to do the job, even if another more qualified, non-handicapped person has applied for the position, unless the employer can show that it would constitute an “undue hardship" to assign the handicapped person to that position. Smith, 180 F.3d at 1167-68; Equal Employment Opportunity Commission v. Humiston-Keeling, Inc., 227 F.3d 1024, 1027-28 (7th Cir. 2000). The Seventh Circuit, on the other hand, has held “that the ADA does not require an employer to reassign a disabled employee to a job, for which there is a better applicant, provided it’s the employer’s consistent and honest policy to hire the best applicant for the particular job in question rather than the first qualified applicant.” Equal Employment Opportunity Commission v. Humiston-Keeling, Inc., 227 F.3d at 1029. The Seventh Circuit acknowledges that the reassignment provision in the ADA imposes a statutory duty to reassign a handicapped worker to a vacant position. However, it understands this duty to mean that an employer, after making a reasonable effort to enable a handicapped person to perform the job for which he was hired or for which he is applying, “must also consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory.” Id. at 1027.
This Court need not speculate as to how the United States Supreme Court will resolve this split in the Federal Circuits if certiorari on this issue is ever granted, because it is plain that this duty to reassign a handicapped person to a vacant position, however defined, derives solely from the statutory language in 42 U.S.C. §12111(9)(B) of the ADA. See, e.g., Smith, 180 F.3d at 1164-68. No such language exists in G.L.c. 15 IB, so no duty derived from this statutory language exists under Massachusetts law.
Nor will this Court, in the absence of such statutory language, interpret “reasonable accommodation” as that term is used in G.L.c. 15 IB to impose an obligation upon an employer to reassign a handicapped employee to a vacant position when the employee, even with reasonable accommodation, cannot perform his present job. As discussed earlier, this is a counterintuitive definition of “reasonable accommodation,” which focuses on the obligation to adjust or adapt job conditions to allow a handicapped person to perform the essential functions of a particular job. Moreover, as the federal cases cited above reflect, imposing such an obligation opens a Pandora’s box of difficult issues regarding the interpretation and application of this obligation by employers. It should be the choice of the .Legislature, not of a court, as to whether to open this box. Finally, as discussed above, although an employer does not have a legal obligation under G.L.c. 15 IB to reassign a handicapped employee to a vacant position, that does not mean that the employee is without legal protection when he is found unable because of his handicap to perform his job even with reasonable accommodation. The employer, under G.L.c. 15IB, may treat him no worse than similarly situated non-handicapped employees. Pragmatically, *243 in light of how most employers presently treat similarly situated non-handicapped employees, handicapped employees who can no longer perform their jobs will in most circumstances be in roughly the same legal position under G.L.c. 15 IB as they would be under the Seventh Circuit’s interpretation of the ADA.
It is plain that the plaintiffs claim of handicap discrimination under G.L.c. 15 IB cannot survive summary judgment unless this Court were to incorporate into an employee’s duty of “reasonable accommodation” under G.L.c. 15 IB the same duty an employer has under the ADA to reassign a handicapped employee to a vacant position. Indeed, it is unlikely that this claim could stand unless the Tenth Circuit’s interpretation of that ADA obligation were incorporated into the meaning of G.L.c. 15 IB.[1] Under this Court’s interpretation of G.L.c. 151B, the plaintiff must prove that he was discriminated against on the basis of his handicap by the MWRA with regard to its consideration of him for vacant positions within the MWRA. To establish a prima Jade case of discrimination on this claim, the plaintiff must show by a preponderance of the evidence:
1. That he suffers from a handicap;
2. That he is a “qualified handicapped person” with respect to one or more of these vacant positions;
3. That he was at least minimally qualified with respect to one or more of these vacant positions; and either:
4. a) That the MWRA treated him differently with respect to these vacant positions than it did other non-handicapped employees comparably situated; or b) that a non-handicapped person no better qualified than the plaintiff was assigned to a vacant position for which the plaintiff was both a “qualified handicapped person” and minimally qualified.
See Labonte, 424 Mass. at 821 (recognizing the need for a flexible approach to this framework that will vary depending on the situation). The plaintiff has failed to present evidence, even viewed in the light most favorable to him, that shows any more than the first element. The evidence does not show that Hayward was turned down for any sedentary positions for which he was minimally qualified, or that he was treated any differently than non-handicapped employees who were similarly situated. Indeed, the record simply makes clear that Hayward vetoed the possibility of a receptionist’s job in 1995 because he thought he would need to go to the bathroom too often, and turned down an 18-month job as a van driver because it was temporary. In view of this record, this Court concludes that Hayward has failed to make out a primafade case of handicap discrimination in violation of G.L.c. 15 IB against the MWRA.
ORDER
For the reasons stated above, the MWRA’s motion for summary judgment is ALLOWED and Hayward’s motion for summary judgment is DENIED.

 The plaintiff has not made any claim of discrimination under the ADA.