KATHARINE WHITE *vs.* THE UNIVERSITY OF
MASSACHUSETTS AT BOSTON & another.[1]

Suffolk. March 4, 1991. - July 3, 1991.

Present: LIACOS. C.J.. WILKINS. ABRAMS. NOLAN. & LYNCH. JJ.

*Anti-Discrimination Law*, Prima facie case. Termination of employment,
Maternity leave, Sex. *Employment*, Termination, Discrimination. *Prac-
tice, Civil*, Summary judgment.

In a civil action in which the plaintiff claimed she was wrongfully termi-
nated from her employment because of her sex, that the termination
was retaliatory due to her filing of discrimination charges, that she was
terminated in bad faith, and that another employee had interefered
with her advantageous employment relations and violated her civil
rights, summary judgment was properly entered for the defendants
where the plaintiff failed to demonstrate that she had been terminated,
and thus she could not establish a prima facie case on any claim. [556-
559]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 18, 1988.

The case was heard by *Elbert Tuttle*, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Wendy A. Kaplan* for the plaintiffs.

*Deirdre Heatwole* for the defendants.

LIACOS, C.J. On October 18, 1988, the plaintiff, Katharine
White, initiated this action against the defendants, The Uni-
versity of Massachusetts at Boston (University) and Alan
Clarke, executive director of the Department of Educational
Support Programs at the University. White's complaint al-
leged gender discrimination in violation of G. L. c. 151B, § 4

---

[1]Alan Clarke.

(1988 ed.),[2] and 42 U.S.C. § 2000e-2 (1990).[3] She alleged further that she was wrongfully terminated from a full-time teaching position at the University because of her sex; that there was retaliatory termination due to her filing discrimination charges with the University and with the Massachusetts Commission Against Discrimination (MCAD); that termination of her employment by the University was in bad faith; and that Clarke maliciously interfered with her advantageous employment relations and violated her civil rights. White sought reinstatement in her teaching and counselling position at the University, compensatory damages, and related injunctive relief.

On September 12, 1989, the defendants submitted a motion for summary judgment pursuant to Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). A judge in the Superior Court granted the motion for summary judgment on all counts and ordered the complaint dismissed. The plaintiff appeals the grant of summary judgment as to the counts of discrimination in employment and retaliation by the University and Clarke, and malicious interference with advantageous employment relations by Clarke. We transferred the appeal to this court on our own motion. We affirm.

*Facts.* The following facts are not in dispute. In 1979, White began working as an English teacher and counselor in

---

[2]General Laws c. 151B, § 4 (1988 ed.), provided, in part: "It shall be unlawful practice:

"1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

Subsection 1 of G. L. c. 151B, § 4, was amended by St. 1989, c. 516, § 4. The amendment is not relevant to this appeal.

[3]Title 42 U.S.C. § 2000e-2 provides, in part: "(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

the University's Veterans Education and Training Program (VET Program). When White learned that she was pregnant, in December, 1986, she notified the supervisor of the VET Program, Charles Diggs, and his supervisor, Kevin Bowen, co-director of the University's Joiner Center for War and Social Consequences. Although the standard period allowed under University policy for maternity leave was eight weeks, White was able to arrange an eight-month leave, during the spring and summer semesters of 1987.[4] White's then-existing employment contract would expire at the end of the leave of absence, on August 31, 1987.

On May 29, 1987, Alan Clarke notified White by letter that he did "not intend to recommend that [her] contract be renewed in its present form" in order "to provide the University with sufficient flexibility to implement the best possible program design." The notice also provided that White would be "accorded preferential treatment in the filling of whatever positions emerge[d]." In July, White requested a further extension of her leave of absence or, alternatively, a part-time teaching position, through the fall semester, 1987.[5] White's supervisor approved the request, with reservations, in a letter addressed to Clarke dated August 11, 1987.[6] Clarke responded to White's request by a letter dated August 14, 1987. In the letter, Clarke denied the request for part-time employment,[7] but stated that he "look[ed] forward to having

---

[4]The eight-month leave period consisted of an eight-week maternity leave and White's remaining vacation leave, followed by a five-month leave of absence.

[5]The record appendix contains a letter, unsigned and undated, addressed to White's supervisor, Diggs, in which White requested that she be permitted "to return [in the fall, 1987] to the night program as a part-time teacher, and then return to [her] full-time job in January of 1988," because her child was "not yet ready for a separation of [the] magnitude" required to undertake full-time employment.

[6]Diggs noted in his letter to Clarke that Diggs wanted a "full-time staff" and that by January, 1988, he wanted "to have the staffing situation stabilized."

Diggs' supervisor, Kevin Bowen, also approved the extension request.

[7]See note 11, *infra.*

[White] rejoin the staff of the Veterans Educational Training Program on a full-time basis."[8] Unable to arrange for her child's care prior to September 1, 1987, White did not return to work for the fall semester.

In November, 1987, White filed a grievance with the University's affirmative action office seeking clarification of her job status. On January 11, 1988, White filed a charge of gender discrimination with the Massachusetts Commission Against Discrimination (MCAD) alleging, inter alia, that in June, 1987, Clarke terminated her position without cause or notice. In a letter dated February 25, 1988, Clarke denied ever having terminated White's position, stating that he offered to renew White's full-time contract beginning in September, 1987, but she turned the offer down. Clarke's letter further provided: "To the best of my knowledge, you have no employment status at the University." Subsequently, White amended her discrimination charge with the MCAD to include a charge of retaliation, alleging that Clarke, by the February 25 letter, terminated her employment at the University because she had filed discrimination charges with the University and the MCAD.[9]

*Motion for summary judgment.* Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). On appeal, an "order granting summary judgment against [the non-moving party] thus will be upheld if certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts and, of course, that his rulings were correct as matter of law." *Community*

---

[8]White claims that she received the letter on August 20, 1987, and that Clarke intentionally sent her notification by the slowest means possible in order to frustrate her attempts to find day care for her child and begin full-time employment on September 1, 1987.

[9]On July 25, 1988, White withdrew her discrimination complaint from the MCAD.

*Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). We view the evidence and the inferences to be drawn therefrom in the light most favorable to the opposing party. *Id.* at 559 n.8.

The pivotal element of each claim asserted by White is the allegation that she was terminated. White's first claim, on appeal, is that she was discriminated against on the basis of her sex and because she had recently been pregnant, and that the discrimination resulted in the termination of her employment at the University. The analysis of a discrimination claim is essentially the same under the State and Federal statutes. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 & n.5 (1976); *Radvilas* v. *Stop & Shop, Inc.*, 18 Mass. App. Ct. 431, 438-439 (1984). In order to establish a prima facie case of sex discrimination resulting in termination of employment, White must establish that (1) she is a member of a protected group; (2) she performed her job at an acceptable level; (3) she was terminated; and (4) her employer sought a replacement with similar qualifications. See *Duke* v. *Uniroyal Inc.*, 928 F.2d 1413 (4th Cir. 1991) (standard applied in challenge of termination on basis of age discrimination). See also *Wheelock College, supra* at 135 n.5, citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 n.13 (1973) (facts necessary to establish prima facie case of discrimination will vary depending on situation).

Asserting a claim based on sex discrimination as a pregnant woman, White is a member of a protected group. See *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167 (1978), citing *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 149 (1976) (Brennan, J., dissenting) (classification relying on pregnancy is distinction based on sex). There was also evidence that she performed her job at an acceptable level, prior to her extended leave of absence beginning in February, 1987. There is no evidence, however, that White was terminated from her position.[10] In

---

[10]White makes no claim that she was constructively terminated. Cf. *Rosado* v. *Santiago*, 562 F.2d 114, 119 (1st Cir. 1977).

fact, the parties agree that in Clarke's August 14, 1987, letter he offered to renew White's full-time contract beginning September 1, 1987.[11] White argues that Clarke's offer was not a genuine offer but, rather, a ruse. White alleges that Clarke knew she could not obtain day care for her child on such short notice, having received the offer only eleven days before the new contract was to begin. While we acknowledge that inferences which may be drawn from uncontested facts are to be drawn in favor of the opposing party, the application of this principle "is predicated on the clear averment by the opposing party of subsidiary facts in [her sworn] pleadings or affidavits." *Community Nat'l Bank, supra* at 559 n.8. White offered no specific facts to demonstrate that Clarke's offer was a ploy to terminate her. Many of her statements in her affidavit were on information and belief (the motion judge characterized them as "opinion") and, thus, are not sufficient under rule 56. See *McKenzie v. Brigham & Women's Hosp.*, 405 Mass. 432, 437-438 (1989). The only other evidence remotely on point is from the deposition testimony of the co-director of the Joiner Center, Kevin Bowen. Bowen testified that Clarke said "he had gotten rid of Kate [White]."[12] We do not consider this a clear averment permitting the inference, without more, that the offer of employment was a ruse.

---

[11]In her brief to this court, White also claims that she was discriminated against when her application for a part-time teaching position was denied. White did not raise this argument in the Superior Court; therefore the claim is not properly before us. We decline to address this issue. See *Prior v. Holiday Inns, Inc.*, 401 Mass. 506, 509 (1988), and cases cited.

[12]The deposition testimony was as follows:

"Q: Has Mr. Clarke said anything to you at any time which has led you to believe that he was hostile to Kate White?

"A [Bowen]: At different times he has expressed hostility to both Kate and Mary, and his threats that he was going to get rid of them I could sometimes interpret as being threats to me because I wanted to keep them, so it was a matter of wills. He did at one point say that after this had transpired, that he had gotten rid of Kate, he was going to get rid of Mary next, and there was nothing I could do to stop him, but this was after he had been drinking."

The facts of record do not permit the conclusion that White was terminated. Thus, she failed to establish a prima facie case of sex discrimination, and summary judgment for the defendants was properly entered. White's claim of retaliation also must fail because this claim also is premised on the fact that she was terminated. As we have indicated, and as the Superior Court judge ruled, she was not terminated. White chose not to accept Clarke's offer of employment. There can be no claim of retaliatory termination when there has not been a termination.[13]

Finally, White's claim that Clarke intentionally interfered with her advantageous relations with the University also is premised on her claim that she was terminated. There having been no termination, White cannot establish a prima facie case.

*Judgment affirmed.*

---

[13]Although not necessary to our holding, we note that White's initial discrimination charge alleged that she had *already* been terminated from her position. Therefore, the filing of her claim could not result in a "re-termination."