**Robert RUNYON, Plaintiff,**

v.

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Defendant.**

C.A. 92–10559–MLW.

United States District Court,
D. Massachusetts.

Dec. 27, 1994.

---

Kevin G. Powers, Boston, MA, for plaintiff.

Jerome N. Weinstein, Palmer & Dodge, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff Robert Runyon brought this action against defendant Massachusetts Institute of Technology ("MIT"), alleging discriminatory acts based on age and handicap, in violation of Mass.Gen.L. ch. 151B, § 4 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). MIT moves for summary judgment on Runyon's claim and moves to strike portions of plaintiff's affidavit and plaintiff's exhibit F filed in opposition to the motion for summary judgment. For the reasons stated below, MIT's motion to strike must be denied and MIT's motion for summary judgment must be granted.

## I. RELEVANT FACTS

The following facts are undisputed unless otherwise noted. Runyon was born on September 13, 1928. He has been employed as an orthopedic surgeon by MIT for over twenty five years. From 1968 to 1981, Runyon provided services to MIT as one of four orthopedists under a fee-for-services arrangement. Beginning in 1981, Runyon held a half-time appointment and provided services both in MIT's Orthopedic Services Clinic (or "Orthopedic Services"), within MIT's Medical Department, and MIT's Sports Medicine Clinic (or "Clinic"), within the Athletic Department. Deposition of Robert Runyon ("Runyon Dep.") at 22–25. In this position, Runyon provided about twenty hours of routine and emergency care.

Dr. James Gavin Manson, the Chief of Orthopedics Services, Dr. Elliott Thrasher,

and Dr. Ronald Geiger are the other physicians who accepted appointments with the Medical Department in 1981. Runyon Dep. at 23–25. When the summary judgement motion was filed, Runyon was 64 years of age; the other physicians were 61, 54, and 52, respectively.

These four physicians worked at the Sports Medicine Clinic until sometime in 1982, when MIT realized the Clinic was overstaffed and contracted it down to three orthopedists. Affidavit of Paul Grace ("Grace Aff.") ¶ 3. Manson ceased providing coverage at the Clinic, but continued working for the Medical Department. Deposition of Dr. James Manson at 7.

In 1988, MIT realized the Sports Medicine Clinic was overstaffed once again. Paul Grace, Coordinator of Sports Medicine, met with Dr. Arnold Weinberg and then Athletic Director Royce Flippin to discuss reducing the Clinic from three to two orthopedists. Grace and Flippin suggested that Geiger and Thrasher continue providing services at the Clinic in view of their record of timeliness, cross-coverage, and continuity of treatment. Deposition of Dr. Arnold Weinberg ("Weinberg Dep.") 50–51; Grace Aff. ¶ 5. Geiger and Thrasher worked out of the same office at Mt. Auburn Hospital and provided similar coverage. Weinberg Dep. 51. Although Runyon provides evidence that his performance was timely and effective, MIT contends that he would often run late and that some athletes, refusing to wait for Runyon, would leave the Clinic without seeing an orthopedist. Grace Aff. ¶ 5.

In mid-April 1988, before MIT implemented the decision to consolidate its Sports Medicine Clinic, Runyon underwent coronary bypass surgery and subsequently went on sick leave for two months. When Runyon returned to work, he was told of the decision to consolidate the Clinic. In September 1988, the aforementioned consolidation took place and Runyon was removed from his duties related to the Sports Medicine Clinic, but continued to work in MIT's Medical Department on a half-time basis. The hours Runyon worked in the Clinic were reassigned to the Medical Department; his compensation and benefits were not affected by the consolidation. Runyon Dep. 92.

Prior to September 1988, Weinberg met with Runyon to discuss the consolidation and reassignment of hours. There is no evidence that Weinberg stated, during that conversation or at any other time, that this reassignment was due specifically to Runyon's bypass surgery. Runyon Dep. 65–66. However, Runyon alleges that Weinberg told him that this reassignment would be less stressful for him, and that Weinberg spoke with Runyon's cardiologist, Dr. Roman Desanctis. Runyon Dep. 97–98. Dr. Desanctis does not have a memory of this conversation. Affidavit of Dr. Roman Desanctis, Exhibit 1 of Defendant's Reply Memorandum. Additionally, Runyon signed the Medical Department's standard Physician's Statement of Health in May 1988 and May 1989, thus certifying that his health did not interfere with his ability to practice medicine. Affidavit of Michael Kane ¶ 2, Exhibit A.

In the late 1980s, the Medical Department Planning Committee decided to review MIT's shifting surgical and orthopedic needs. The Planning Committee considered the financial and surgical data available for Orthopedic Services and General Surgery and concluded that the Medical Department was overstaffed. The Planning Committee decided to reduce each specialty area by one half-time appointment. Weinberg Dep. 40–43. The members of the Planning Committee then decided to eliminate Runyon's half-time position. Weinberg Dep. at 67. The other physician affected by the Planning Committee's decision was Dr. Matt Weintraub, who was forty-five years of age at the time his position was eliminated. *Id.* at 44. MIT asserts that the Planning Committee's primary consideration for choosing to eliminate Runyon "was one of logistics and continuity of patient care." Defendant's Motion For Summary Judgment 8 ("MIT Motion"). The other three orthopedists, Manson, Geiger and Thrasher, were each based at Mount Auburn Hospital, where the majority of MIT's orthopedic patients were admitted for hospitalization. Weinberg Dep. 67–69. Runyon's office was located at 319 Longwood Avenue in Boston. Second Affidavit of Robert C. Runyon.

MIT also contends that Runyon conducted fewer patient visits than the other three physicians. Weinberg Dep. at 68.

On December 19, 1989, Runyon was orally notified by Weinberg of the decision to eliminate his half-time appointment in Orthopedic Services by July, 1990. There is no evidence that MIT sent Runyon a written notification of termination at that time, as required by MIT's Policies and Procedures § 3.35.2. Exhibit C of Runyon Memorandum in Opposition to Defendant's Motion For Summary Judgment ("Runyon Mem."). At this time, Runyon was 61, Weinberg was 60 and Manson, Geiger and Thrasher were 58, 50, and 49, respectively. MIT Motion 9.

Runyon became concerned that the July 1990 termination date would affect his retirement benefits. Negotiations between the parties regarding this issue ensued and continued until July 5, 1990, when Runyon received a final written proposal from MIT. Runyon Mem. at Exhibit 4. This proposal offered to maintain the plaintiff's employment status at MIT until September, 1991, at which time the Runyon would be placed on a leave of absence. According to MIT, Runyon, from September 1, 1991 to the present, has held a half-time appointment for purposes of benefits. Affidavit of Linda Rounds ¶ 10. He works on an emergency on-call basis only. Plaintiff's Stipulation Of Issues Of Fact Not In Dispute ¶ 11. He receives $30,000 per annum, plus an employee benefits package. Runyon Dep. 151–153.

On September 10, 1990, Runyon filed an administrative complaint against MIT with the Massachusetts Commission Against Discrimination ("MCAD"), alleging age and handicap discrimination and requesting that the charge also be filed with the Equal Employment Opportunity Commission. He commenced this civil action in March 1992.

## II. DISCUSSION

### A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. Summary Judgment Standard

■ In considering a motion for summary judgment, the court is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part that summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this inquiry, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Trans. Corp.*, 722 F.2d 922, 928 (1st Cir.1983); *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *Attallah v. United States*, 955 F.2d 776, 779 (1st Cir. 1992).

■ In weighing the merits of a motion for summary judgment, the court must address two questions: (1) whether the factual disputes are genuine, and (2) whether a fact genuinely in dispute is material. *Anderson v. Liberty*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510. In order to determine if a dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). "Even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz*, 896 F.2d at 8.

In deciding a motion for summary judgment, the court may only consider evidence which meets the requirements of Fed. R.Civ.P. 56(e). "Affidavits fail to comply with the Rule when they are not made on personal knowledge, contain impermissible speculation or conclusory language, do not

show affirmatively that the witness is competent to testify to the matters stated, or otherwise fail to set forth facts which would be admissible in evidence." *Apex Const. Co., Inc. v. U.S.,* 719 F.Supp. 1144 (D.Mass.1989), *citing, Over the Road Drivers, Inc. v. Transport Insurance Co.,* 637 F.2d 816 (1st Cir. 1980).

### 2. Defendant's Motion to Strike

■ In this case, MIT moves to strike portions of plaintiff's affidavit and plaintiff's Exhibit F, submitted in opposition to MIT's motion for summary judgment, because the evidence fails to comply with the requirements of Fed.R.Civ.P. 56(e). More specifically, MIT objects to Runyon's statements: (1) that he received a smaller yearly salary increase in 1989 than did another orthopedic surgeon; (2) that MIT previously provided Thrasher with malpractice insurance coverage; and, (3) that his home and office were no further away from MIT than were the homes and offices of Manson, Geiger and Thrasher.

In his opposition to the motion to strike, Runyon submits new affidavits which cure the defendant's concerns. Runyon asserts that he prepared the document comparing the distances between the homes of his fellow orthopedists and that he measured those distances himself. Runyon also submits an affidavit from Thrasher stating that MIT brought him under malpractice insurance on or about April, 1991. In addition, the evidence for which Runyon does not submit additional affidavits is admissible as based on personal knowledge as well as an admission of an agent (Thrasher) of MIT under Fed. R.Evid. 801(d)(2)(D). Thus, MIT's motion to strike must be denied.

### 3. Timing of Plaintiff's Filing

■ In this case, MIT first argues that Runyon's claim is timebarred for failure to file a claim with the MCAD within the limitation period provided for under Mass.Gen.L. ch. 151B. In order to seek relief in the courts, plaintiff must file an administrative complaint within six-months of the discriminatory act. *Christo v. Edward G. Boyle Insurance Agency, Inc.,* 402 Mass. 815, 817,

525 N.E.2d 643 (1988); Mass.Gen.L. ch. 151B, §§ 5, 9. However, this limitation period begins running only after final notification of termination. *See Burr v. The Memorial Press Group,* 8 MDLR 1053, 1062 (1986). The Supreme Court has characterized final notification as "formal," not "in any respect tentative," and stated that the employee's efforts to gain a reversal of the decision must be met by an "unbroken array of negative decisions." *Delaware State College v. Ricks,* 449 U.S. 250, 262, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980). In addition to the six-month administrative filing requirement, a plaintiff must bring a civil action "not later than three years after the alleged unlawful practice occurred." Mass.Gen.L. ch. 151B, § 9.

The Court of Appeals for the First Circuit has repeatedly held that the limitations period begins running when an employee first learns of his termination, and not when the employee first feels the effects of his termination. *See, e.g., Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 749 (1st Cir.1994) (initial termination letter, not subsequent communications, marked beginning of limitations period); *Ching v. Mitre Corp.,* 921 F.2d 11, 14 (1st Cir.1990) (cause of action accrues on the happening of event likely to put plaintiff on notice). *Morris* is distinguishable from the instant case because it turns on the issuance of a termination letter. Runyon, however, did not receive such a letter in December 1989, when MIT first discussed his termination with him. Runyon's case also differs from those in which something less than written notification was held to be sufficient notice to begin the running of the limitations period. In *Ching,* an informal notice of termination to plaintiff's attorney was sufficient to commence accrual of limitations period because the court found it to be "unequivocal." 921 F.2d at 13–14. In that case, plaintiff "obviously believed" the notice was final since he filed suit with the MCAD four days prior to his formal dismissal. *Id.* Here, Runyon did not "obviously believe" the notification was final since he continued negotiating with MIT and continued working there. Accordingly, that is not a case where a reasonable factfin-

der could conclude that this is not a case in which the initial notice to plaintiff was "unequivocal."

More specifically, in this case, MIT claims that final notice of termination was given to Runyon on or about December 19, 1989, informing Runyon that his employment would end in July, 1990. However, MIT did not send Runyon written notification of termination in December, 1989 as required by MIT's Policies and Procedures § 3.35.2. Furthermore, correspondence between the two parties continued on this matter through July 5, 1990, at which time a final written proposal was sent to Runyon. Runyon had not been terminated by July, 1990.

Runyon filed his administrative claim in September 1990 and commenced his civil action in March 1992. In light of the foregoing facts, the court finds that Runyon provides sufficient evidence to place the time-bar issue in genuine dispute.

### 4. The Merits

■ Nevertheless, Runyon's claim does not survive summary judgment. Because Runyon does not offer direct evidence of age or handicap discrimination, both his ADEA and Mass.Gen.L. ch. 151B claims must be examined under the three-step analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir.1993) (in absence of direct evidence of age discrimination, ADEA claim is governed by burden-shifting set forth in *McDonnell Douglas*); *Cox v. New England Telephone*, 414 Mass. 375, 385, 607 N.E.2d 1035 (1993) (burden-shifting framework applies in all employment discrimination cases alleging disparate treatment); *White v. University of Massachusetts at Boston*, 410 Mass. 553, 557, 574 N.E.2d 356 (1991) (same analysis for claims under Mass.Gen.L. ch. 151B).

■ Under this burden-shifting framework, the plaintiff must first present a *prima facie* case of discrimination. Establishment of the *prima facie* case creates a presumption that the employer engaged in impermissible discrimination. *LeBlanc v. Great*

*American Insurance Co.*, 6 F.3d 836, 842 (1st Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant, who may rebut the presumption by producing a legitimate, nondiscriminatory reason for the negative employment action. *Id.* at 802; *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1983). If the defendant articulates such a reason, the *McDonnell Douglas* presumption "drops out of the picture." *St. Mary's Honor Center v. Hicks*, — U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *LeBlanc*, 6 F.3d at 842. For the claim based upon Massachusetts law, the defendant must also show that its proffered reason is "credible." *Brunner v. Stone & Webster Engineering Corp.*, 413 Mass. 698, 700, 603 N.E.2d 206 (1992). Plaintiff then must produce sufficient evidence, direct or indirect, to show that the reasons offered by the defendant constitute a pretext for legally prohibited discrimination. *Woods v. Friction Materials Inc.*, 30 F.3d 255, 260 (1st Cir. 1994). (*Woods II*) At all times, the burden of ultimate persuasion rests with the plaintiff. *St. Mary's,* — U.S. at ——–——, 113 S.Ct. at 2747–48. Therefore, if the plaintiff fails to demonstrate illegal discrimination, the challenged employment action must stand. *Id.,* 113 S.Ct. at 2752 n. 6.

### 5. Plaintiff's *Prima Facie* Case

■ The plaintiff's burden of establishing a *prima facie* case of discrimination is "not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff must produce adequate evidence on the following elements to establish a *prima facie* case of age discrimination: (1) that he is at least forty years of age; (2) that he was able to meet the employer's legitimate job performance expectations; (3) that he experienced adverse employment action, and (4) that the employer did not treat age neutrally, or younger persons were retained in the same position. *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir.1989); *Woods v. Friction Materials, Inc.*, 836 F.Supp. 899, 903 (D.Mass. 1993), *aff'd.,* 30 F.3d 255 (1st Cir.1994). (*Woods I*)

### a. Age Discrimination

 Runyon meets this burden as to his age discrimination claim. He is over forty years old; he produces evidence that he was competent in his job; his hours from the Clinic were reassigned, and, eventually, his half-time position was to be eliminated; and, the three other orthopedists with whom he worked were younger and did not experience similar adverse employment action.

 Runyon complains that his termination constituted the last event in a continuing series of violations, all of which are compensable in this action. *Mack v. Great Atlantic & Pacific Tea Co., Inc.*, 871 F.2d 179, 182 (1st Cir.1989). It is not, however, necessary to decide now whether Runyon has offered evidence sufficient to litigate further a continuing violation claim. It is axiomatic that there must be sufficient evidence to permit a reasonable factfinder to conclude that one of the violations occurred within the six months of the filing with the MCAD (or EEOC). *Id.* at 470–71. In this case, the reasons for Runyon's termination must be genuinely in dispute if he is to survive MIT's motion for summary judgment. The earlier events, including the reassignment of his hours, would be admissible to prove discriminatory intent regarding the termination, even if not events for which Runyon could be compensated on a continuing violation theory. *See* Fed.R.Evid. 404(b); *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (prior events may constitute relevant background evidence); *Cajigas v. Banco de Ponce*, 741 F.2d 464, 470 (1st Cir.1984) (prior event may be relevant to shed light on later event); *Denton v. Int'l Brotherhood of Boilermakers, et al.*, 653 F.Supp. 55, 60 (D.Mass.1986) (prior event may be admissible as relevant conduct). Where, as here, however, the claim concerning the event within the limitations period fails, the purported prior violations may not be litigated. *Mack*, 871 F.2d at 183.

### b. Handicap Discrimination

 Runyon does not establish a *prima facie* case for handicap discrimination, since he has not produced evidence sufficient to establish that he was handicapped. Under Massachusetts law, the term "handicap" is defined as:

> (a) a physical or mental impairment, which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment.

Mass.Gen.L. ch. 151B, § 1. Runyon signed statements after his return from sick leave asserting that he was physically able to perform all of his job duties. Furthermore, there is not sufficient evidence to support a finding that MIT considered Runyon to be physically unable to perform his work, or even regarded his abilities as impaired. All Runyon offers is a statement by Weinberg that the reassignment of hours would be "less stressful" for him.

However, even if this court assumes that Runyon has satisfied the requirements for a *prima facie* case of handicap discrimination, the defendant still prevails on its motion for summary judgement. *See Martin v. Envelope Division of Westvaco Corp.*, 850 F.Supp. 83, 92 (D.Mass.1994) (even assuming plaintiff with heart condition established *prima facie* case, defendant's legitimate nondiscriminatory justification applies both to age and handicap discrimination claims). As set out below, Runyon has not introduced evidence sufficient to support the conclusion that MIT's articulated reasons for reassigning his hours from the Clinic and for eliminating his half-time appointment were pretextual. Thus, summary judgement is appropriate for both Runyon's age and handicap discrimination claims.

### 6. Defendant's Articulated Nondiscriminatory Reason

MIT successfully rebuts the presumption of discrimination arising from Runyon's *prima facie* case by articulating a credible, legitimate, non-discriminatory reason for its decision first to reassign Runyon and then to eliminate his half-time appointment. Specifically, MIT asserts that it considered logistics and continuity of patient care in deciding to implement a reduction in force.

To support this assertion, MIT presents evidence that the orthopedists it chose to

keep on were more efficient and provided continuity of care. Geiger, Thrasher and Manson all have their offices at Mount Auburn Hospital; and, in fact, Geiger and Thrasher share an office there. MIT's evidence also indicates that Runyon saw fewer patients than the remaining physicians. MIT asserts that Runyon was often late in seeing patients and that many times athletes would refuse to wait for him and would leave the Clinic without seeing an orthopedists. As to the need for a reduction in force, MIT points to the changing needs of its Medical Department and the assessment of the department's Planning Committee.

By presenting evidence of the need for a reduction in force, as well as evidence that the remaining orthopedists provided continuity of care, MIT adequately articulates a legitimate, nondiscriminatory reason for its decision to reassign and terminate Runyon. *See Goldman*, 985 F.2d at 1119. This evidence is sufficiently credible to require Runyon to respond under Massachusetts law. *Brunner*, 413 Mass. at 700, 603 N.E.2d 206.

### 7. Pretext and Discriminatory Animus

 To survive defendant's motion for summary judgment, Runyon must present evidence of "specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: discrimination." *Medina–Munoz*, 896 F.2d at 9. Runyon alleges that MIT reassigned his hours from the Clinic to the Medical Department and eliminated his half-time appointment because of his age and handicap. He asserts that MIT's articulated reasons for doing so were pretextual by offering evidence that he was timely and competent in his job. This evidence, however, is insufficient to make the showing of discriminatory animus required to defeat defendant's motion for summary judgment. *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (plaintiff's evidence not sufficient to prove pretext, let alone pretext for discrimination). In *Villanueva*, a Chicano faculty member filed an action against the defendant when he was denied tenure. The court found that plaintiff

presented a prima facie case, but granted summary judgement for the defendant because the college was able to articulate legitimate, nondiscriminatory reasons for not granting him tenure. The court found that the plaintiff's weak evidence to rebut those reasons was not sufficient to place the issue of pretext in genuine dispute. *Id.* at 130–32.

Runyon has introduced evidence that creates a dispute as to MIT's reasons for its actions. He asserts that Weinberg stated his efficiency did not play a role in the decision to chose Runyon. Also, Runyon asserts that issues regarding his timeliness and efficiency were never brought to his attention prior to the adverse employment action. He further provides evidence from staff members at MIT stating he was both efficient and professional to work with.

Nevertheless, a challenge to the bases of a defendant's decisions is not sufficient to prove pretext, much less pretext which conceals a discriminatory animus. *See Hoeppner v. Crotched Mountain Rehab. Center, Inc.*, 31 F.3d 9, 17 (1st Cir.1994); *Morgan v. Massachusetts General Hospital*, 901 F.2d 186, 191 (1st Cir.1990); *Menard v. First Security Corporation*, 848 F.2d 281, 287 (1st Cir.1988). The Court of Appeals for the First Circuit has consistently held that a plaintiff's burden cannot be met merely by disputing or refuting the defendant's stated reason for the action at issue. *See, e.g., Morgan*, 901 F.2d at 191. Rather:

> In order to create a dispute of material fact, a discrimination plaintiff must raise an inference of discriminatory motive underlying the pretextual explanation. *Medina–Munoz*, 896 F.2d at 9. Nondiscriminatory motive is immaterial to a discrimination case; therefore the mere showing that the employer's articulated reason may shield another (possibly nondiscriminatory) reason does not create a dispute of material fact. Only if there is evidence from which a reasonable inference of discrimination can be drawn has the plaintiff defeated the summary judgment motion.

*Villanueva*, 930 F.2d at 128.

The Supreme Court addressed the issue of pretext in *St. Mary's*. In *St. Mary's*, the Supreme Court ruled that a factfinder's disbelief of a defendant's articulated nondiscriminatory reason for its adverse employment action does not necessarily entitle a

plaintiff to prevail. —— U.S. at ——, 113 S.Ct. at 2749. Rather, the Supreme Court held that a plaintiff at all times bears "the ultimate burden of persuasion," on the issue of intentional discrimination. *Id.* However, the Supreme Court also noted that, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *Id.*

While the Supreme Judicial Court has not yet spoken on *St. Mary's,* the First Circuit has interpreted that case to mean that a plaintiff cannot proceed past the summary judgement stage without producing either direct or indirect evidence from which a factfinder may infer discriminatory animus on the part of the employer. *See Woods II,* 30 F.3d at 260 & n. 3; *LeBlanc,* 6 F.3d at 843. In *Woods II,* the First Circuit specifically rejected the claim that a plaintiff can survive summary judgement in all cases by presenting a *prima facie* case and establishing a genuine issue of fact as to whether the employer's asserted explanation for its action is believable. *Woods II,* 30 F.3d at 260 & n. 3. Although the First Circuit recognized *St. Mary's* holding that in some circumstances a strong *prima facie* case and a disbelief of the defendant's articulated reason may be adequate to justify an inference of actual discrimination, *Woods II* makes clear that such an inference does not arise as a matter of law, and can not be drawn in all cases. *Id.; LeBlanc,* 6 F.3d at 843.

Here, as in *Woods II,* even when viewed in the light most favorable to the plaintiff, the evidence is insufficient to permit a reasonable factfinder to infer discriminatory animus. *See Woods I,* 836 F.Supp. at 903–908. Without sufficient direct or indirect evidence of discrimination based on age or handicap, Runyon cannot withstand MIT's motion for summary judgement. His weak *prima facie* case coupled with evidence of satisfactory job performance does not meet his burden of proof. MIT has provided specific evidence of the need for a reduction in force and its decision to reassign and then eliminate Runyon's position.

Runyon's allegation and evidence are insufficient to place the issue of discrimination in genuine dispute. In *Medina–Munoz* there was a "fragmentary tendril" of evidence supporting possible bias; there is no such evidence here. Nevertheless, summary judgment was granted and affirmed in *Medina–Munoz* because there had been "no statistical evidence, no demonstration of discriminatory corporate policies, no instances of disparate treatment, no invidious pattern of [impermissible] discharges ..." *Medina–Munoz,* 896 F.2d at 10. Thus, based on such sparse evidence "a factfinder would be left to guess at the reasons behind the pretext." *Id.* These observations are equally applicable here. *See also Woods II,* 30 F.3d at 262 (plaintiff introduced insufficient evidence of discriminatory animus to withstand defendant's motion for summary judgement).

As a result of Runyon's failure to present either direct or circumstantial evidence sufficient to permit a reasonable factfinder to conclude that he was discriminated against, summary judgment for the defendant must be granted.

### III. *ORDER*

For the foregoing reasons, defendant's motion to strike (Docket No. 24) is hereby denied and defendant's motion for summary (Docket No. 17) judgment is hereby allowed.