Pamela Ann GUNTHER, Plaintiff,

v.

The GAP, INC., Defendant.

No. Civ.A. 97–10027–PBS.

United States District Court,
D. Massachusetts.

March 31, 1998.

Anthony M. Fredella, Fredella & Wheeler, Somerville, MA, for Pamela Ann Gunther.

Ilene Robinson, Rachael K. Jeck, Sullivan & Worcester, LLP, Boston, MA, for GAP Stores, Inc.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SARIS, District Judge.

### INTRODUCTION

Plaintiff Pamela Ann Gunther claims that The Gap, Inc. ("Gap") discharged her from employment because of her gender in violation of Mass.G.L. c. 151B, 4, and her pregnancy in violation of G.L. c. 149, § 105D, and c. 151B, § 4(11A). Gunther alleges that the Gap's stated reason for her discharge, violation of company policy for failure to supervise, was mere pretext for the belief that she could no longer fulfill her duties as a store manager because she was a single parent with a newborn child. Gunther further claims that the Gap discriminated against her because she was not returned to an equivalent position following her maternity leave. After hearing and an opportunity for supplemental discovery and briefing, the Court *ALLOWS* defendant's motion for summary judgment.

### BACKGROUND

Drawing all inferences in favor of Gunther, the Court considers the following facts as undisputed.

### A. *Maternity Leave*

Gunther was a manager at a Gap retail store in the North Shore Mall in Peabody, Massachusetts when she took maternity leave in January 1993. Prior to going on out leave, she told the Gap she planned on coming back. Upon return from maternity leave in March 1993, she was reassigned to the Gap retail store at the Methuen Mall in Methuen, Massachusetts. While Gunther was on leave, the Gap district manager, Kathleen Steinhouse, stated that Methuen would be closer to Gunther's home and would be "easier with you being a new mother." (Gunther Dep.Tr. 53 & 86.) Gunther re-sponded that she still wanted to work at the Peabody store. At another time prior to Gunther's return, Steinhouse said she "didn't know if [Gunther] could handle Peabody with having a new role as a mother." Steinhouse felt it was "too much responsibility" for Gunther. (Dep.Tr. 87 & 90.) One time while visiting the Methuen store, Steinhouse asked Gunther how being a mother was.

The Gap's maternity leave policy guarantees that store managers can return to the same position, but not necessarily in · the same store. Gunther did not return to the same store, but she retained her managerial position and continued to receive the same salary. However, the Methuen store had a much lower volume of business than the Peabody store. Gunther claims that she was penalized after her maternity leave, not in salary but by demotion in store status. The Methuen store had the only available opening when Gunther was ready to return to work in early March 1993.

### B. *Discharge*

Despite her dissatisfaction with her reassignment, Gunther became the manager of the Methuen Gap. On November 10, 1993, Gunther and Christine Coffin, a new associate store manager, both participated in a demonstration at a beauty salon next door to the Gap store in the Methuen Mall. Gunther was not scheduled to work that day, and Coffin was scheduled to open the store. Gunther had told Coffin, the day before, that she could participate in the 9:00 a.m. demonstration if she went into work at 8:00 a.m. to do the one hour of preparation required to open the store by 10:00 a.m. Gunther, coincidentally, went into work on the morning of the demonstration around 8:00 a.m. to finish some work from the previous evening, and she observed Coffin preparing to open the store.

The hair salon demonstration did not conclude before Coffin was required to open the store. Coffin left the salon and unlocked the store—with her hair still in the process of being colored—then returned to the salon. In doing so, she left a sales person in charge

and unsupervised, in contravention of store policy, for 45 minutes. Coffin went back to the Gap twice to check on things. Gunther was still at the hair salon when Coffin returned from opening the store, but she did not document or report the violation. After this incident, Gunther attended a meeting with Steinhouse, the district manager, in which Gunther was informed that disciplinary action would be taken for her breach of company policy. Gunther was formally terminated from her employment on November 22, 1993. She believed that the Gap trumped up the charge to fire her because she had a child. (Dep. Tr. 85.)

## C. Administrative Proceedings

On July 19, 1994, the Massachusetts Department of Employment and Training Board of Review found that Gunther qualified for unemployment compensation benefits under G.L. c. 152. The Board found that Gunther was terminated because she violated the company policy but that the policy was not reasonable nor uniformly enforced in this situation because Gunther was not scheduled to work on the day of the incident and because it was the first time she had violated the rule. Therefore, the Board decided that she was not disqualified from receiving unemployment benefits by G.L. c. 151A, § 25(e)(2).

On May 19, 1994, Gunther filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") which alleged that the Gap had violated G.L. c. 151B, § 4. The MCAD investigated (1) whether the Gap terminated Gunther because of her sex (i.e., her pregnancy and subsequent status as a working mother); and (2) whether the Gap reassigned her when she returned from her pregnancy leave to a less desirable position with less compensation because of her sex. Although concluding that Gunther established a prima facie case of sex discrimination, it dismissed the complaint on July 29, 1996, finding the Gap had not discriminated against her because of her pregnancy and that there was no evidence that "her reprimand for having violated this policy was more severe than that for those not in her protected class."

## D. Litigation

In November 1996, Gunther filed a complaint against the Gap in Essex Superior Court. The complaint alleged that Gunther was discriminated against as "a female who bore a child" in violation of G.L. c. 151B, § 4(1), and that the Gap also violated § 4(11A) of that chapter by failing to restore her to her original position at the North Shore Mall. Gunther claims her discharge was mere pretext for underlying gender discrimination.

On January 15, 1997, the Gap removed the case here under 28 U.S.C. § 1446(e). After some discovery, this motion for summary judgment was filed on July 18, 1997 by the Gap pursuant to Fed.R.Civ.P. 56. A hearing was held October 17, 1997. The Court permitted additional discovery based on plaintiff's statement that counsel mistakenly believed discovery had been stayed following defendant's motion for a stay.

## DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992). A court must allow a motion for summary judgment as a matter of law when the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact. *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party, which "cannot fend off summary judgment unless it makes a competent demonstration that *every essential element* of its claim or defense is at least trialworthy." *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir.1991) (emphasis in original). " 'If the evidence is merely colorable or is not significantly probative, sum-

mary judgment may be granted.' " *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### B. *Unlawful Discharge*

■ Based on her termination, Gunther alleges a claim of disparate treatment under G.L. c. 151B, § 4(1).[1] "In a c. 151B case involving an assertion of sexual discrimination in employment, the plaintiff has the burden of persuading the fact finder that the employer intentionally discriminated against him or her on account of sex, and that, but for the discrimination, the employer would not have taken the complained-of action." *Brunner v. Stone & Webster Eng'g Corp.*, 413 Mass. 698, 699, 603 N.E.2d 206 (1992). The Court applies a firmly-entrenched three-pronged burden-shifting framework to such cases. *See Matthews v. Ocean .Spray Cranberries, Inc.*, 426 Mass. 122, 127–28, 686 N.E.2d 1303 (1997); *accord Lehman v. Prudential Ins. Co.*, 74 F.3d 323, 327 (1st Cir. 1996).

■ First, the plaintiff must make out a prima facie case of discrimination. *Matthews*, 426 Mass. at 128, 686 N.E.2d 1303. "In order to establish a prima facie case of gender discrimination resulting in the termination of employment, the plaintiff must establish that (1) she is a member of a protected group; (2) she was capable of performing the job at an acceptable level; (3) she was terminated; and (4) her employer sought a replacement with similar qualifications." *Beal v. Board of Selectmen*, 419 Mass. 535, 544, 646 N.E.2d 131 (1995). Second, after a prima facie case has been established, the burden of production shifts to the employer, who must "articulate a legitimate, nondiscriminatory reason for its hiring decision" and "produce credible evidence that the reason or reasons advanced were the real reasons." *Matthews*, 426 Mass. at 128, 686 N.E.2d 1303. The burden returns to the plaintiff in the third stage of this inquiry to prove that "the defendant's proffered reason for its employment decision was not the real reason, but is a pretext for discrimination." *Id.*

#### 1. *Prima Facie Discrimination*

To establish the first element of a prima facie case, Gunther must show that she was discriminated against on the basis of her gender, either generally or because of her pregnancy. *See Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167, 375 N.E.2d 1192 (1978).

■ Two of Gunther's theories are easily eliminated. First, a plaintiff is a member of a protected class if she asserts "a claim based on sex discrimination as a pregnant woman." *White v. University of Mass.*, 410 Mass. 553, 557, 574 N.E.2d 356 (1991). There is no allegation that Gunther's *termination* was motivated by animus toward her pregnancy because at the time of her discharge she was not pregnant and had been working for over eight months in a managerial position with equivalent salary. Second, to the extent that Gunther is claiming she was discriminated against as a single mother, she can not prevail. Parenthood is not listed as a protected class in the statute. *See* G.L. c. 151B, § 4; cf. *Upton v. JWP Businessland*, 425 Mass. 756, 758–59, 682 N.E.2d 1357 (1997) (holding that it was not a violation of public policy for the defendant to discharge the plaintiff, an at-will employee, because she was a single mother unwilling to work newly imposed long hours).

■ With respect to the claim of pure gender discrimination, however, Gunther satisfies that first, second and third elements of the prima facie discrimination analysis. She was capable of performing her job at an acceptable level and was terminated from her employment with the Gap. The fourth and final element of the analysis—whether her employer sought to replace her with someone

---

1. Mass.G.L. c. 151B, § 4(1), states, in pertinent part:

It shall be an unlawful practice:

1. For an employer, ... because of the sex ... of any individual ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

77

with similar qualifications—is more problematic because there is no evidence before the Court which indicates who, if anyone, replaced the plaintiff as a manager at the Gap store in Methuen following her termination. Indeed, in the complaint, Gunther alleges that the Methuen store was scheduled to close down at the end of 1993 because of low volume and theft problems. Drawing all reasonable inferences against the Gap as the moving party, the Court can reasonably infer that the Gap replaced Gunther with a manager of similar qualifications because there is no evidence in the record that the store in fact closed down. Thus, Gunther has established a prima facie case of gender discrimination and the burden shifts to the Gap.

### 2. Nondiscriminatory Termination

 The Gap satisfies this burden of production in the second prong of disparate treatment analysis because it produced admissible evidence that Gunther was discharged for not following a company policy, of which she had knowledge, which required that managers ensure the store is supervised at all times and is appropriately staffed. The defendant's burden under this prong is "one of production, not persuasion." *Lehman*, 74 F.3d at 328 n. 5; *see also Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 442, 646 N.E.2d 111 (1995) (noting that the "burden of production is not onerous"). The Gap does not have to prove that its evaluation of the severity of Gunther's infraction was correct. *See Pryor v. Holiday Inns, Inc.* 401 Mass. 506, 511, 517 N.E.2d 472 (1988). "The reasons given for a decision may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff can not prevail." *Lewis v. Area II Homecare For Senior Citizens, Inc.*, 397 Mass. 761, 766, 493 N.E.2d 867 (1986). Therefore, even though the discharge appears harsh under the circumstances, violation of a company policy constitutes a legitimate, nondiscriminatory reason for the termination of Gunther's employment, and the Gap has met its burden of production. *See Pryor*, 401 Mass. at 511, 517 N.E.2d 472 (finding "general dissatisfaction with plaintiff's attitude and

work performance" to be enough to establish a legitimate discharge).

### 3. Pretext

 With the burden shifting back to the plaintiff, Gunther must demonstrate that the "proffered reason for an adverse employment action is merely pretextual" for sex discrimination in order to survive the motion for summary judgment. *Lehman*, 74 F.3d at 327 n. 2 (distinguishing Massachusetts law from federal law). "Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent." *Id.* at 329. Conversations between Gunther and Steinhouse are the only evidence offered by the plaintiff to establish pretext and to meet this third and final burden of proof. Gunther argues that Steinhouse made comments to her while she was on maternity leave about her new role as a mother and her ability to handle the high volume of business in the Peabody store. Gunther also claims there was an "implied, unstated expectation" she should work long hours when she returned from maternity leave, although she acknowledges no one ever asked her to. Steinhouse's isolated remarks are not sufficient to establish an inference that the discharge was a pretext for sex discrimination.

 Gunther asks the Court to consider the decision of the Board of Review of the Department of Employment and Training, which awarded unemployment benefits over objections based on G.L. c. 151A, § 25(e)(2). Although the opinion of the Board was adverse to the Gap, it does not greatly assist plaintiff in this action because the Board concluded that the reason for termination was violation of a staffing policy—not gender discrimination. It is also worth noting that the MCAD issued a finding of lack of probable cause with respect to plaintiff's unlawful discrimination claim. *See Tate v. Department of Mental Health*, 419 Mass. 356, 364, 645 N.E.2d 1159 (1995).

### C. Restoration to an Equivalent Position Following Maternity Leave

 Gunther also claims that she was

penalized under G.L. c. 151B, § 4(11A),[2] when she was reassigned to the Methuen Gap store following her maternity leave rather than returning to the Peabody store. (Compl.¶ 22.)

General Laws c. 149, § 105D, requires that a female employee returning from maternity leave "be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, whenever applicable, as of the date of here leave." Gunther's status as a manager and her salary did not change; only the location of her store did. Her managerial duties at the Methuen Gap were equivalent. Gunther's assignment to a Gap store with a lower volume of business and a higher crime rate does not constitute a violation of § 105D, particularly since there were no other management positions open at the time of her return in the appropriate geographical area. The Gap had plans to transfer her to Medford, when it became available. There is no evidence to support the latest allegation that Gunther was fired because of any inconvenience associated with her having taken maternity leave.

### ORDER

Defendant's motion for summary judgment is *ALLOWED*.

2. G.L. c. 151B, § 4(11A), states, in pertinent part, that it is unlawful:

11A. For an employer ... to refuse to restore certain female employees to employment following their absence by reason of a maternity leave taken in accordance with [G.L. c. 149, § 105D] or to otherwise fail to comply with the provisions of said section ... or to impose any other penalty as a result of a maternity leave of absence.