Lemire, James R., J.
Plaintiff Hailee DeSouza (“De-Souza” or “plaintiff’), filed this action against DRS-Power Technology, Inc. (“DRS” or “defendant”) for wrongful termination in violation of public policy. Specifically, DeSouza alleges that he was terminated from his temporary engineering position as a Mechanical Engineer for DRS because he reported design flaws on a Navy Ship project he was working on. The matter is before the court on defendant’s Motion for Summary Judgment. For the reasons discussed below, defendant’s motion is DENIED.
BACKGROUND
DRS is an engineering and manufacturing business that provides design services and hardware associated with large rotating machinery and power conversion equipment to the United States Navy and commercial customers. DeSouza was hired as a temporary engineer for DRS through a temporary staffing agency. DeSouza began working at DRS on October 13, 2003.
The facts as asserted by DeSouza, the non-moving party, are as follows. During his employment with DRS, DeSouza reported directly to John Janikas (“Janikas”). DeSouza was assigned to the MTG 30 project, a project relative to the construction of a United States Navy ship. He was specifically assigned to the skid base, which is the foundation or sub base of the entire structure and the acoustic enclosure. This MTG 30 project was subject to the military specifications outlined in Requirements for Fabrication Welding and Inspection and Casting Inspection and Repair for Machinery, Piping and Pressure Vessels.
On DeSouza’s second day of employment, Janikas directed DeSouza to attend a team engineering meeting, in which Janikas presented a slideshow of the MTG 30 project. Janikas indicated that the slides represented the final design prints. DeSouza observed several design flaws in the final design prints and informed the employees present during the team meeting about the design defects he discovered. Specifically, DeSouza identified approximately twenty to twenty-six design flaws which included, but were not limited to, design non-conformance, prohibited design structures, unsafe supports, improper structural connection between two members, improper connection between the structure and the support, improper connection between vertical structures and the base, lack of welding and sizing, failure to include symbols to instruct the vendor what type of weld to use, failure to identify the stiffness of the panels, failure to identify roof supports and insufficient identification of bolt design. DeSouza spent approximately thirty minutes pointing out the design defects and stating how they compromised the structural integrity of the project.
Janikas and a few others present at the meeting challenged DeSouza regarding the design defects that he pointed out. DeSouza advised the employees that the design did not adhere to the American Institute of Steel Construction Code, an academic textbook for engineers. A CEO present at the meeting directed the team to correct the design flaws and to work with DeSouza to do so.
After the meeting, Janikas informed DeSouza that he was no longer allowed to work on the project. In addition, a co-worker, Gary Foland, approached DeS-ouza using profanity and referred to him as a “coward” and a “psycho.” Following the meeting, Janikas showed DeSouza drawings which Janikas claimed were the MTG 30 project drawings with the design flaws corrected. Another co-worker, Norm Nutter, however, told DeSouza that Janikas had shown him design drawings for another project and had misrepresented that the design defects had been corrected.
On October 28, 2003, DeSouza responded to an e-mail asking him to provide answers on questionnaire regarding the MTG 30 project. Janikas sent DeSouza an e-mail instructing him not to answer the questionnaire. However, DeSouza had already provided answers to the questionnaire and e-mailed the answers to all of the group leaders prior to reading Janikas’s email.
Following DeSouza’s response to the questionnaire, Janikas directed DeSouza to attend six separate meetings regarding DeSouza’s answers to the questionnaires. During these meetings, DeSouza claims that Janikas questioned, tested and insulted DeSouza’s engineering skills with respect to DeSouza’s responses. By the sixth meeting, DeSouza informed *470 Janikas that he believed that Janikas was subjecting him to harassment because he had identified the design flaws.
On November 6, 2003, DeSouza was informed that he was terminated from his position at DRS because the engineering group did not like him and did not want to work with him. Furthermore, he was told that the reason for his termination had been forwarded to the staffing agency. However, the agency never received a reason for DeSouza’s termination.

DISCUSSION

Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’ . . . that there is an absence of evidence to support the non-moving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).

I. Count I: Wrongful Termination

In Count I of his complaint. DeSouza alleges wrongful termination by DRS in violation of public policy. DRS seeks summary judgment as to Count I based on the argument that DeSouza, an at-will employee, has not alleged that DRS terminated him in violation of any public policy recognized by Massachusetts law.
Under Massachusetts law, the general rule is that “employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriner’s Hosp. for Crippled Children, 412 Mass. 469, 472 (1992), citing Jackson v. Action for Boston Cmty Dev., Inc., 403 Mass. 8, 9 (1988). However, the Supreme Judicial Court has recognized exceptions to this general rule when “employment is terminated contrary to a well-defined public policy.” Wright, 412 Mass. at 473. Nevertheless, the Supreme Judicial Court has consistently interpreted this public policy exception narrowly, “reasoning that to do otherwise would convert the general rule into a rule that requires just cause to terminate an at-will employee.” King v. Driscoll, 418 Mass. 576, 582 (1994) (citations omitted). It is for the judge to determine “whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated.” Mello v. Stop and Shop Cos., 402 Mass. 555, 561 (1988).
In its motion for summary judgment, DRS argues that DeSouza’s claim must fail because he has not alleged that DRS has terminated him in violation of any public policy recognized by Massachusetts law. Furthermore, DRS asserts that while the public policy exception applies to employees who make internal reports of criminal wrongdoing, it does not apply in instances of internal complaints about non-criminal matters. See Wright, 412 Mass. at 474; Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 151 (1989); Mello, 402 Mass. at 560-61. DRS contends that DeSouza did not report any criminal wrongdoing at DRS or make any external reports of wrongful acts to anyone outside of DRS. Instead, DRS argues that DeSouza made one internal report of purported design flaws to DRS employees during a meeting. Specifically, DeSouza claims to have identified what he believed were between 20-26 design flaws, which he believed violated the American Institute of Construction Code, an academic textbook for engineers. DRS argues that even if DeSouza had been terminated for making such an internal complaint, his claim for wrongful termination in violation of public policy would still fail, since his claim is based on an internal report of a non-criminal matter. Thus, DRS asserts that summary judgment should be granted as to DeSouza’s wrongful termination claim.
*471 In his opposition to DRS’s motion for summary judgment, DeSouza articulates a violation of public policy as derived from federal legislation. DeSouza argues that he is protected by the public policy exception because he complained about design flaws in the MTG 30 Navy Ship Project, which did not adhere to the American Institute of Steel Construction Code or to the military specifications. Specifically, DeSouza cites 18 U.S.C. §2156(a), which states: “Whoever, with intent to injure, interfere with, or obstruct the national defense of the United States, willfully makes, constructs, or attempts to make or construct in a defective manner, any national-defense material, national-defense premises or national-defense utilities, or any tool, implement, machine, utensil, or receptacle used or employed in making, producing, manufacturing, or repairing any such national-defense material, national-defense premises or national-defense utilities, shall be fined under this title or imprisoned not more than ten years, or both.”
DeSouza further looks to other federal legislation which aims to protect employees who disclose, based upon reasonable belief, violations of federal law by their employers, particularly relative to defense contracts. See, e.g., 10 U.S.C. §2409(a). See also, Shea v. Emmanuel College, 425 Mass. 761, 763 (1997).
In Hutson v. The Analytic Sciences Corp., 860 F.Sup. 6 (D.Mass. 1994), the district court concluded that in light of relevant case law, “the Massachusetts Supreme Judicial Court would approve consideration of federal law as a potential source of a well-defined important public policy of the Commonwealth.” Hutson, 860 F.Sup. 6, at 10. In that case, an employee of a corporate contractor on a Navy SEAWATCH project alleged that he was terminated from his employment in violation of public policy, partly because he identified and disclosed potential defects or flaws in the SEAWATCH technology as applied by the employer. The court determined that “federal policy regarding national defense is of paramount importance to the vital interests of the populace of Massachusetts,” and concluded that to the extent that the plaintiff was fired for identifying such defects in the national defense material, he would have a cause of action for wrongful discharge in violation of public policy under Massachusetts law. Id. at 12.
DeSouza contends that as an employee of a government contractor in construction of a Navy Ship project, his termination implicates public policy derived from federal law as it relates to the defective construction of national defense materials. Because DeSouza has articulated a violation of public policy based on federal law, summary judgment is denied as to wrongful termination claim.

ORDER

For the preceding reasons, DRS’s Motion for Summary Judgment is DENIED.